1 Whitney E. Street (CA Bar No. 223870)
**BLOCK & LEVITON LLP**
2 100 Pine Street, Suite 1250
San Francisco, CA 94111
3 Tel.: (415) 968-1852
Fax: (617) 507-6020
4 whitney@blockesq.com
5
Jacob A. Walker (CA Bar No. 271217)
6 **BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
7 Boston, MA 02110
Tel.: (617) 398-5600
8 Fax: (617) 507-6020
9 jake@blockesq.com
10 *Attorneys for Plaintiff*
11
12 **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
13

14 GREGORY A. HURST, individually and on
behalf of all others similarly situated,
15

16           Plaintiff,                        Case No. _____

17 v.

18 ENPHASE ENERGY, INC.,                       **CLASS ACTION COMPLAINT FOR**
BADRINARAYANAN                                **VIOLATIONS OF THE FEDERAL**
19 KOTHANDARAMAN, and ERIC                     **SECURITIES LAWS**
BRANDERIZ,
20                                             **JURY TRIAL DEMANDED**
21           Defendants.
22

23
        Plaintiff, Gregory A. Hurst, ("Plaintiff"), by and through his attorneys, alleges upon
24
personal knowledge as to his own acts, and upon information and belief as to all other matters,
25
based upon the investigation conducted by and through his attorneys, which included, among
26
other things, a review of documents filed by Defendants (as defined below) with the United
27

28

States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Enphase Energy, Inc. ("Enphase" or the "Company") common stock between February 26, 2019 and June 17, 2020, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2. Enphase is a global energy technology company that "deliver[s] smart, easy-to-use solutions that manage solar generation, storage and communication on one intelligent platform." The Company asserts that it "revolutionized the solar industry with [its] microinverter technology" and that it "produce[s] a fully integrated solar-plus-storage solution."[1]

3. In violation of the Exchange Act, Enphase misled investors as to its financial results, including, *inter alia*, its revenues (both domestic and international), its base points expansion in gross margins, and its accounting practices. This has led to inflated financial results.

4. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts to investors. Specifically, Defendants misrepresented and/or failed to disclose to investors that: (1) its revenues, both U.S. and international, were inflated; (2) the Company engaged in improper deferred revenue accounting practices; (3) the Company's reported base points expansion in gross margins were

---

[1] https://www.sec.gov/ix?doc=/Archives/edgar/data/1463101/000146310120000021/a2019q410-kdoc.htm at Part I.

overstated; and that (4) as a result of the foregoing, Defendants' public statements were materially false and misleading at all relevant times.

5. On June 17, 2020, analyst Prescience Point Capital Management published a report in which it wrote that "we believe the Company's financial statements filed with the SEC are fiction. Based on our research, we estimate that <u>at least</u> $205.3m of its reported US revenue in FY 2019 was fabricated. Based on statements provided by former employees and other solar industry participants, it appears that the Company inflated its international revenue significantly as well. We also believe that most, if not all, of the enormous 2,080 Bps expansion in the Company's gross margin during [Defendant Badrinarayanan] Kothandaraman's tenure as CEO – from 18.4% in Q2 2017 to 39.2% in Q1 2020 – is fiction. We believe government bodies should investigate ENPH, Deloitte should launch an in-depth investigation of the Company's accounting practices, and the Board of Directors should establish an independent committee to examine the findings and analyses presented in this report."[2]

6. On this news, the stock plummeted from its June 16, 2020 closing price of $52.76 per share to a June 17, 2020 closing price of $39.04 per share, a one day drop of $13.72 or approximately 26%.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The federal law claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

---

[2] *See* https://www.presciencepoint.com/wp-content/uploads/2020/06/ENPH-June-2020-Report_FINAL.pdf (last visited on June 17, 2020).

3

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, § 27 of the Exchange Act, 15 U.S.C. § 78aa.

10. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

12. In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## INTRADISTRICT ASSIGNMENT

13. Pursuant to Local Rule 3-2(c), this is a securities fraud class action to be assigned on a district-wide basis. Defendant Enphase Energy, Inc. is headquartered in Fremont, CA, which is closest to the San Jose Division.

## PARTIES

14. Plaintiff Gregory A. Hurst, as set forth in his Certification filed contemporaneously herewith, acquired shares of Enphase common stock at artificially inflated prices, and has been damaged.

15. Defendant Enphase Energy, Inc. is incorporated under the laws of Delaware, with its principal place of business at 47281 Bayside Parkway, Fremont, CA 94538. Its common stock trades on the Nasdaq stock exchange under the symbol ENPH.

4

16. Defendant Badrinarayanan Kothandaraman is the Chief Executive Officer and President of Enphase Energy, Inc., and has served in that capacity since September 2017. Mr. Kothandaraman joined Enphase in April 2017 as Chief Operating Officer.

17. Defendant Eric Branderiz is the Chief Financial Officer of Enphase Energy, Inc., and has served in that capacity since 2018.

18. Defendants Kothandaraman and Branderiz are named as Defendants for violations of all counts asserted herein, and are referred to as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers, and the investing public, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material, non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading. The Individual Defendants are therefore liable for the misstatements and omissions plead herein.

**DEFENDANTS' FALSE AND MISLEADING STATEMENTS AND/OR OMISSIONS**

19. On February 26, 2019, the beginning of the Class Period, Enphase issued a press release on Form 8-K with the SEC in which it announced the Company's financial results for the fourth quarter and year-ended 2018. In this release, Enphase stated that for the fourth quarter of 2018, it had revenue of $92.3 million, an increase of 18% sequentially and an increase of 16% year-over-year. It further stated that the Company's non-GAAP gross margin was 30.7%, a decrease of 210 basis points from 32.8% in the third quarter. For the full year ended December

31, 2018, Enphase reported revenue of $316.159 million, with gross margins of 29.9%, up from $286.166 million and 19.6% for the year ended December 31, 2017.[3]

20.     Then, on March 15, 2019, the Company filed its 2018 Annual Report on Form 10-K with the SEC.[4] In its 2018 Form 10-K, Enphase reiterated that its revenue for the year ended December 31, 2018 was $316.159 million, and that gross margins were 29.9%.

21.     Attached to the 2018 Form 10-K were certifications signed by Defendants Kothandaraman and Branderiz in which they stated that "[b]ased on [their] knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report." These signed certifications further provided that "[b]ased on [their] knowledge, "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

22.     On April 30, 2019, Enphase issued its financial report for the first quarter of 2019 on Form 10-Q with the SEC,[5] and filed an accompanying press release via Form 8-K with the SEC.[6] In these materials, the Company reported revenue for the first quarter of 2019 of $100.2 million (a 43% increase year-over-year), cash flows from operating activities of $17.1 million, and GAAP gross margins of 33.3%. The Company stated that it "continued to see strong demand across the board from our customers, overcoming the typical first quarter seasonality in the solar industry." It further stated that its "non-GAAP gross margin as 33.5%, an increase of 280 basis

[3] https://www.sec.gov/Archives/edgar/data/1463101/000146310119000009/a2018q48-kexx991pressrelea.htm
[4] https://www.sec.gov/Archives/edgar/data/1463101/000146310119000033/a2018form10-k.htm.
[5] https://www.sec.gov/ix?doc=/Archives/edgar/data/1463101/000146310119000089/a2019q110-qdoc.htm
[6] https://www.sec.gov/Archives/edgar/data/1463101/000146310119000087/a2019q18-kexx991pressrelea.htm

points from 30.7% in the fourth quarter of 2018. The non-GAAP gross margin was negatively impacted by 280 basis points due to expedite fees related to component shortages."

23.     Attached to the First Quarter 2019 Form 10-Q were certifications signed by Defendants Kothandaraman and Branderiz in which they stated that "[b]ased on [their] knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report." These signed certifications further provided that "[b]ased on [their] knowledge, "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

24.     On July 30, 2019, Enphase issued its financial report for the second quarter of 2019 on Form 10-Q with the SEC,[7] and filed an accompanying press release via Form 8-K with the SEC.[8] In these materials, the Company reported revenue for the second quarter of 2019 of $134.1 million, cash flows from operating activities of $14.8 million, and GAAP gross margins of 33.8%. In addition, the Company stated that its "non-GAAP gross margin was 34.1%, an increase of 60 basis points from 33.5% in the first quarter of 2019. The non-GAAP gross margin was negatively impacted by approximately 330 basis points due to expedite fees related to component shortages."

25.     Attached to the Second Quarter 2019 Form 10-Q were certifications signed by Defendants Kothandaraman and Branderiz in which they stated that "[b]ased on [their] knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which

---

[7] https://www.sec.gov/ix?doc=/Archives/edgar/data/1463101/000146310119000129/a2019q210-qdoc.htm
[8] https://www.sec.gov/Archives/edgar/data/1463101/000146310119000128/a2019q28-kexx991pressrelea.htm

7

such statements were made, not misleading with respect to the period covered by this report." These signed certifications further provided that "[b]ased on [their] knowledge, "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

26. On October 29, 2019, Enphase filed its financial report for the third quarter of 2019 on Form 10-Q with the SEC,[9] and filed an accompanying press release via Form 8-K with the SEC.[10] In these materials, the Company reported revenue for the third quarter of 2019 of $180.1 million, cash flows from operating activities of $5.0 million, and GAAP gross margins of 35.9%. In addition, the Company stated that its "non-GAAP gross margin was 36.2%, an increase of 210 basis points from 34.1% in the second quarter of 2019. The non-GAAP gross margin was negatively impacted by approximately 220 basis points due to expedite fees related to component shortages."

27. Attached to the Third Quarter 2019 Form 10-Q were certifications signed by Defendants Kothandaraman and Branderiz in which they stated that "[b]ased on [their] knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report." These signed certifications further provided that "[b]ased on [their] knowledge, "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

[9] https://www.sec.gov/ix?doc=/Archives/edgar/data/1463101/000146310119000157/a2019q310-qdoc.htm
[10] https://www.sec.gov/Archives/edgar/data/1463101/000146310119000155/a2019q38-kexx991pressr.htm

28.     On December 12, 2019, the Company filed on Form 8-K with the SEC a presentation it shared with investors entitled "Profitable Growth."[11] In this presentation, the Company lauded its 2019 revenues of $619 million – an increase of 96% year-over-year – as well as its $122 million of operating income – an increase of 495% year-over-year. The Company stated that it "[e]xceeded [its] financial target."

29.     On February 18, 2020, Enphase filed a press release on Form 8-K with the SEC, in which the Company announced its fourth quarter and year-ended 2019 financial results.[12] For the fourth quarter of 2019, Enphase stated that it had revenue of $210.0 million, cash flow from operations of $102.3 million, and GAAP gross margins of 37.1%. It added that its "non-GAAP gross margin was 37.3%, an increase of 110 basis points from 36.2% in the third quarter of 2019."

30.     In this same release, for the year ended December 31, 2019, Enphase stated its revenues were $624.333 million – nearly double the $316.159 million of revenue the Company reported for the year ended December 31, 2018. Enphase also stated that its GAAP gross margins grew year-over-year from 29.9% to 35.4%, that its non-GAAP gross margins grew from 30.2% to 35.7% year-over-year, and that its GAAP and non-GAAP basic and diluted earnings per share massively increased year-over-year, from a GAAP loss of 12 cents per share to a GAAP profit of $1.38 (basic) and $1.23 (diluted), and from a non-GAAP profit of 10 cents per share to a non-GAAP profit of $1.06 (basic) and $0.95 (diluted).

---

[11] https://www.sec.gov/Archives/edgar/data/1463101/000146310119000169/a12122019ex99_1.htm
[12] https://www.sec.gov/Archives/edgar/data/1463101/000146310120000010/a2019q48-kexx991pressr.htm

31.     On February 21, 2020, the Company issued its 2019 Annual Report on Form 10-K with the SEC.[13] This report confirmed the financial results stated by the Company in its February 18, 2020 press release.

32.     Attached to the 2019 Form 10-K were certifications signed by Defendants Kothandaraman and Branderiz in which they stated that "[b]ased on [their] knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report." These signed certifications further provided that "[b]ased on [their] knowledge, "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

33.     On May 5, 2020, Enphase filed its financial report for the first quarter of 2020 on Form 10-Q with the SEC,[14] and filed an accompanying press release via Form 8-K with the SEC.[15] In these materials, the Company reported revenue for the first quarter of 2020 of $205.5 million, cash flows from operating activities of $39.2 million, and GAAP gross margins of 39.2%. In addition, the Company stated that its "non-GAAP gross margin increased to 39.5% from 37.3% in the fourth quarter of 2019, driven by disciplined pricing and cost management."

34.     Attached to the First Quarter 2020 Form 10-Q were certifications signed by Defendants Kothandaraman and Branderiz in which they stated that "[b]ased on [their] knowledge, this report does not contain any untrue statement of a material fact or omit to state a

---

[13] https://www.sec.gov/ix?doc=/Archives/edgar/data/1463101/000146310120000021/a2019q410-kdoc.htm
[14] https://www.sec.gov/ix?doc=/Archives/edgar/data/1463101/000146310120000068/a2020q110-qdoc.htm
[15] https://www.sec.gov/Archives/edgar/data/1463101/000146310120000067/a2020q18-kexx991pressr.htm

material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report." These signed certifications further provided that "[b]ased on [their] knowledge, "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

35.     The statements in ¶¶ 19-34 were materially false and misleading and omitted to disclose material information. Specifically, Defendants misrepresented and/or failed to disclose to investors that: (1) its revenues, both U.S. and international, were inflated; (2) the Company engaged in improper deferred revenue accounting practices; (3) the Company's reported base points expansion in gross margins were overstated; and that (4) as a result of the foregoing, Defendants' public statements were materially false and misleading at all relevant times.

36.     Defendants knew, or in reckless disregard for the truth should have known, that at the time the statements in ¶¶ 19-34 were made, they were false and/or misleading, and/or failed to disclose material information to investors.

**THE TRUTH BEGINS TO EMERGE**

37.     On June 17, 2020, analyst Prescience Point Capital Management published a report in which it wrote that "[a]t least $205.3m of ENPH's reported FY19 US revenue is fabricated, and a significant portion of its international revenue is fabricated as well." The report continued: "[m]ost, if not all, of the 2,080 Bps expansion in ENPH's gross margin since Q2'17 is also fabricated," and called on Enphase's accountant, Deloitte, to "launch an in-depth investigation of EPNH's accounting practices." Prescience Point further called on "[r]egulatory and law enforcement agencies with subpoena power [to] launch a full investigation of the Company, its accounting, its disclosures and trading by insiders."

38.     Prescience Point continued: "[a] breakthrough in our research of ENPH occurred in late 2019 when we were told by a former ENPH employee that the Company had, peculiarly, offshored many of its key finance and accounting . . . functions to its India-based office in late 2018. As past accounting scandals have shown, offshore entities can and have been used as a tool to help companies perpetrate fraud. Given this, and our previous reservations about ENPH's accounting practices, we viewed this as a significant red flag that warranted further investigation."

39.     Prescience Point further stated that it "hired a reputable third-party private investigation firm to conduct on-the-ground research in India. During its weeks-long investigation, our private investigators spoke with numerous former ENPH employees and solar industry participants based in India. The findings of this investigation confirmed our suspicions and uncovered numerous troubling revelations about the Company's accounting and business practices."

40.     The Prescience Point report further provided that:

- *According to former employees, ENPH's offshore F&A team in India is assisting in the Company's apparent book cooking:* Former employees told our investigators that ENPH is using its offshore F&A team to help perpetrate its allegedly fraudulent accounting practices, under the direction of the US executive team. This has apparently helped the Company take its book cooking to new heights, as evidenced by the parabolic increase in its revenue since the India-based F&A team was established at the end of FY 2018.

- *ENPH has stacked its executive teams in the US and India with 'Yes-Men' from Cypress and SunEdison, including with disgraced former SunEdison CEO Ahmad Chatila:* According to former employees, Ahmad Chatila ("Chatila") is allegedly working for ENPH in some type of consultant or unofficial executive role, and apparently has a substantial amount of influence within the Company. In addition to Chatila, ENPH has stacked its executive teams in both the US and India with numerous other close, former colleagues from Cypress and SunEdison, seemingly for the purpose of creating an environment conducive to fraud. Former employees claim that these executives are very tight-knit and secretive, and have, at times, reprimanded or even fired certain employees who questioned their accounting and business practices.

- **_The belief that ENPH's reported financials are likely fiction appears to be widespread amongst both former and current employees:_** Almost all of the former employees our private investigators spoke with either claimed or believed that the Company's financial performance was fabricated. Our investigators were also told that numerous current employees are similarly skeptical about ENPH's reported financials.

- **_According to former employees, ENPH is using improper deferred revenue accounting to inflate its financial performance:_** Former employees indicated that a significant portion of the Company's astronomical growth over the past two years is attributable to improper deferred revenue accounting. Our investigators were also told that, as part of its deferred revenue accounting scheme, the Company may be "tweaking" some of its contracts, enabling it to recognize revenue prior to the actual service being provided.

- **_A distributor in India severed its relationship with ENPH based on its belief that ENPH was fraudulently inflating invoices:_** According to an employee of an ENPH distributor in India, his/her company severed its relationship with ENPH based on its belief that ENPH was circumventing them and working directly with installers to fraudulently inflate invoices. We believe this suspected practice of forging invoices likely extends beyond what this one distributor experienced.

- **_Employee turnover in ENPH's India office is alarmingly high:_** According to an industry participant with knowledge of ENPH's India-based operations, employee turnover in the Company's Bangalore office is an astronomical 70% annually. We believe ENPH's apparent book cooking and toxic work culture are likely the driving force behind the mass exodus of its India employees.[16]

41.    In addition, Prescience Point wrote:

ENPH executives and board members, as well as its previous largest shareholder, appear to have learned of the existence of our private investigation and are desperately trying to unload their shares before the ship sinks. In the span of just four days from June 1st, 2020 to June 4th, 2020, ENPH executives sold an unprecedented 254,097 shares worth a whopping $13.7m in open market dispositions,[17] which significantly exceeds the 187,508 or $3.9m worth of shares ENPH executives had sold in the almost 2.5 years prior. Additionally, board member TJ Rodgers sold an astonishing 2.0m shares worth $98.1m,[18]

---

[16] *See* https://www.presciencepoint.com/wp-content/uploads/2020/06/ENPH-June-2020-Report_FINAL.pdf at 8 (last visited on June 17, 2020).
[17] *See* https://www.secform4.com/filings/1463101/0001463101-20-000080.htm; https://www.secform4.com/filings/1463101/0001463101-20-000087.htm; https://www.secform4.com/filings/1463101/0001463101-20-000088.htm; https://www.secform4.com/filings/1463101/0001463101-20-000089.htm.
[18] https://www.secform4.com/filings/1463101/0001463101-20-000090.htm

representing almost 60% of his total holdings, in open market dispositions in the span of just four days from June 8th, 2020 to June 11th, 2020. Furthermore, Ben Kortlang disposed of 180,000 ENPH shares worth $9.0m,[19] representing a whopping 65% of his total holdings, in open market dispositions in the span of just one day on June 15th. Lastly, Chilean entrepreneur Isidoro Quiroga, who was ENPH's largest shareholder with an ~11% stake worth more than $800m, sold his entire investment in the span of just one day on May 20th, 2020.[20]

42.     On this news, ***Enphase's stock price plummeted by approximately 26% in one day***, from June 16, 2020 close of $52.76 per share to a June 17, 2020 close of $39.04 per share.

43.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Enphase's common stock, Plaintiff and other members of the Class have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Enphase common stock between February 26, 2019 and June 17, 2020, inclusive, seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

45.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

[19] https://www.secform4.com/filings/1463101/0001463101-20-000091.htm
[20] https://www.secform4.com/filings/1463101/0001104659-20-065019.htm

46.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a.   Whether the Exchange Act was violated by Defendants;

b.   Whether Defendants omitted and/or misrepresented material facts;

c.   Whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d.   Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.   Whether the price of the Company's stock was artificially inflated; and

f.   The extent of damage sustained by Class members and the appropriate measure of damages.

47.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

48.     Plaintiff will adequately protect the interests of the Class and have retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

49.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

50.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

a.   Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.   The omissions and misrepresentations were material;

c.   The Company's common stock traded in efficient markets;

d.   The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e.   Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts.

51.   At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

**NO SAFE HARBOR**

52.   The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

53.   To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**SCIENTER ALLEGATIONS**

54.   As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Enphase, their control over, and/or receipt and/or modification of Enphase's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Enphase, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION

55.     On June 17, 2020, analyst Prescience Point Capital Management issued its highly critical research report, as alleged above. On this news, Enphase common stock plummeted from a June 16, 2020 closing price of $52.76 per share to close at $39.04 on June 17, 2020, a one day drop of $13.72 per share or approximately 26%.

## CAUSES OF ACTION

### <u>COUNT ONE</u>
**Violations of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**

56.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose the material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

58.     Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii)

engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

59. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**COUNT TWO**
**Violations of § 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

60. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61. The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents described above which contained statements alleged by Plaintiff to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a) determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23

of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

b) awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post- judgment interest thereon.

c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.


Dated: June 17, 2020                                    Respectfully submitted,

By: */s/ Whitney E. Street*
Whitney E. Street (CA Bar No. 223870)
**BLOCK & LEVITON LLP**
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel.: (415) 968-1852
Fax: (617) 507-6020
whitney@blockesq.com

Jacob A. Walker (CA Bar No. 271217)
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
Tel.: (617) 398-5600
Fax: (617) 507-6020
jake@blockesq.com

*Counsel for Plaintiff*