1   LATHAM & WATKINS LLP
    Matthew Rawlinson (SBN 231890)
2      Daniel R. Gherardi (SBN 317771)
  140 Scott Drive
3   Menlo Park, California  94025
Telephone:  +1.650.328.4600
4   Facsimile:  +1.650.463.2600
*matt.rawlinson@lw.com*
5   *daniel.gherardi@lw.com*

6       Michele D. Johnson (SBN 198298)
650 Town Center Drive, 20th Floor
7   Costa Mesa, California 92626
Telephone:  +1.714.540.1235
8   Facsimile:   +1.714.755.8290
*michele.johnson@lw.com*
9
    Colleen C. Smith (SBN 231216)
10   12670 High Bluff Drive
San Diego, California 92130
11   Telephone:  +1.858.523.5400
Facsimile:   +1.858.523.5450
12   *colleen.smith@lw.com*

13       Gavin M. Masuda (SBN 260480)
505 Montgomery Street, Suite 2000
14   San Francisco, California 94111
Telephone:  +1.415.391.0600
15   Facsimile:  +1.415.395.8095
*gavin.masuda@lw.com*
16
*Attorneys for Defendants*
17

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| GREGORY A. HURST, individually and on behalf of all others similarly situated, | CASE NO.  5:20-cv-04036-BLF |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| ENPHASE ENERGY, INC., BADRINARAYANAN KOTHANDARAMAN, and ERIC BRANDERIZ, | Hearing:      July 29, 2021 Time:          9:00 a.m. Location:     Courtroom 3 – 5th Floor |
| Defendants. | Hon. Beth Labson Freeman |

# **TABLE OF CONTENTS**

I.       INTRODUCTION ........................................................................................................ 2

II.      BACKGROUND ........................................................................................................ 4

III.     LEGAL STANDARD ................................................................................................. 7

IV.      ARGUMENT ............................................................................................................. 8

     A.     Plaintiff Fails to Plead a Materially False or Misleading Statement .................... 8

         1.     Disagreement With Accounting Decisions Does Not
             Render Them False ............................................................................... 8

         2.     Plaintiff's Third-Hand "Confidential Witnesses" Do Not
             Establish a False Statement of Fact .................................................. 12

         3.     Plaintiff's SOX Certification Allegations Also Fail ............................... 15

     B.     Plaintiff Fails to Plead Scienter.......................................................................... 15

         1.     Plaintiff's Scienter Allegations Are Insufficient..................................... 15

         2.     Insider Stock Sales Do Not Establish Scienter ....................................... 18

     C.     Plaintiff Fails to Plead Loss Causation .............................................................. 19

     D.     Plaintiff's Section 20(a) Claim Fails................................................................... 21

V.       CONCLUSION........................................................................................................ 21

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
  2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)..............................................................................9

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
  2016 WL 2937483 (N.D. Cal. May 20, 2016) ..........................................................................20

*Brodsky v. Yahoo! Inc.*
  630 F. Supp. 2d 1104 (N.D. Cal. 2009) ...................................................................................14

*In re Cadence Design Sys., Inc. Sec. Litig.*,
  654 F. Supp. 2d 1037 (N.D. Cal. 2009) ...................................................................................16

*In re Cirrus Logic Sec. Litig.*,
  946 F. Supp. 1446 (N.D. Cal. 1996) .........................................................................................9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ...................................................................................................10

*City of Dearborn Heights Act 345 Policy & Fire Ret. Sys. v. Align Tech., Inc.*,
  65 F. Supp. 3d 840 (N.D. Cal. 2014) ..................................................................................7, 12

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
  963 F. Supp. 2d 1092 (E.D. Wash. 2013) ..................................................................................8

*Deason v. Super Micro Computer, Inc.*,
  2017 WL 4355128 (N.D. Cal. Sept. 29, 2017) ..........................................................................8

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ....................................................................................................11

*In re First Union Corp. Sec. Litig.*,
  128 F. Supp. 2d 871 (W.D.N.C. 2001) .................................................................................9, 11

*Grigsby v. BofI Holding, Inc.*,
  979 F.3d 1198 (9th Cir. 2020) .................................................................................................19

*Harris v. AmTrust Fin. Servs., Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015).......................................................................................12

*In re Herbalife, Ltd. Sec. Litig.*,
  2015 WL 1245191 (C.D. Cal. Mar. 16, 2015)..........................................................................20

*In re Comms.' Sys., Inc.*,
  2003 WL 21383824 (N.D. Cal. Feb. 24, 2003) .........................................................................3

*In re Infonet Servs. Corp. Sec. Litig.*,
   310 F. Supp. 2d 1080 (C.D. Cal. 2003) ...................................................................15

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .......................................................................................7

*Kipling v. Flex, Ltd.*,
   2020 WL 7261314 (N.D. Cal. Dec. 10, 2020) ...........................................12, 13, 14

*In re Levi Strauss & Co. Sec. Litig.*,
   527 F. Supp. 2d 965 (N.D. Cal. 2007) ........................................................................8

*Lewy v. SkyPeople Fruit Juice, Inc.*,
   2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012) ..........................................................11

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ...................................................................................21

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) .............................................................................16, 19

*Long Miao v. Fanhua, Inc.*
   442 F. Supp. 3d 774 (S.D.N.Y. 2020) ................................................................13, 14

*In re Maxwell Techs., Inc. Sec. Litig.*,
   18 F. Supp. 3d 1023 (S.D. Cal. 2014) .......................................................................16

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ...........................................................7, 15, 17, 18

*Meyer v. Greene*,
   710 F.3d 1189 (11th Cir. 2013) ...........................................................................20, 21

*In re MF Global Holdings Ltd. Sec. Litig.*,
   982 F. Supp. 2d 277 (S.D.N.Y. 2013)........................................................................9

*Miller v. PCM, Inc.*,
   2018 WL 5099722 (C.D. Cal. Jan. 3, 2018) ............................................................20

*Mulquin v. Nektar Therapeutics*,
   2020 WL 7773580 (N.D. Cal. Dec. 30, 2020) .........................................................19

*In re Nektar Therapeutics*,
   2020 WL 3962004 (N.D. Cal. July 13, 2020)..........................................7, 9, 14, 15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)................................................................................................9, 10

*Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*,
   774 F.3d 598 (9th Cir. 2014) .....................................................................................20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

MOTION TO DISMISS
CASE NO. 5:20-CV-04036-BLF

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ...............................................................................21

*Pearlstein v. BlackBerry Ltd.*,
    93 F. Supp. 3d 233 (S.D.N.Y. 2015)....................................................................9

*In re Pixar Sec. Litig.*,
    450 F. Supp. 2d 1096 (N.D. Cal. 2006) ...............................................................18

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) .............................................................................18

*In re Rackable Sys., Inc. Sec. Litig.*,
    2010 WL 3447857 (N.D. Cal. Aug. 27, 2010) ...............................................10, 11

*In re Redback Networks, Inc. Sec. Litig.*,
    2007 WL 963958 (N.D. Cal. Mar. 30, 2007)........................................................8

*Rieckborn v. Jefferies LLC*,
    81 F. Supp. 3d 902 (N.D. Cal. 2015) ...................................................................9

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ...........................................................................7, 16

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    2019 WL 2491935 (N.D. Cal. June 14, 2019) ......................................................13

*Turner v. MagicJack VocalTec, Ltd.*,
    2014 WL 406917 (S.D.N.Y. Feb. 3, 2014).......................................................8, 11

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) .................................................................17

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) .............................................................................21

*Wozniak v. Align Tech., Inc.*,
    2011 WL 2269418 (N.D. Cal. June 8, 2011) ........................................................18

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ........................................................................12, 14

## STATUTES

15 U.S.C. § 78u-4(e) ...................................................................................................2

Private Securities Litigation Reform Act of 1995 ("PSLRA")............................. *passim*

Securities Exchange Act of 1934
    § 10(b)....................................................................................................................1, 7, 8, 21
    § 20(a)..........................................................................................................................1, 21

**RULES**

Federal Rule of Civil Procedure
    9(b)...................................................................................................................................1, 7
    10b-5.....................................................................................................................................7
    12(b)(6)................................................................................................................................1

1          **NOTICE OF MOTION AND MOTION TO DISMISS**

2     **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

3          PLEASE TAKE NOTICE that on July 29, 2021 at 9:00 a.m., or as soon thereafter as the

4     parties may be heard, before the Honorable Beth Labson Freeman, District Court Judge, United

5     States District Court for the Northern District of California, in the San Jose Division Courthouse,

6     Courtroom 3, 5th Floor, 280 South 1st Street, San Jose, California 95113, Defendants Enphase

7     Energy, Inc. ("Enphase" or the "Company"), Badrinarayanan Kothandaraman, and Eric

8     Branderiz ("Individual Defendants," and with Enphase, "Defendants") will and hereby do move

9     for an order dismissing Lead Plaintiff Gregory Hurst's ("Plaintiff") Amended Class Action

10    Complaint for Violations of the Federal Securities Laws ("Complaint" or "AC") (Dkt. No. 52).

11    This Motion is made pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the

12    Private Securities Litigation Reform Act of 1995 ("PSLRA"), and on the grounds that Plaintiff

13    fails to state a claim upon which relief can be granted.  Plaintiff fails to allege particularized facts

14    establishing (1) any false statements or omissions under Section 10(b) of the Securities Exchange

15    Act of 1934 (the "Exchange Act"), (2) that any of the statements challenged were made with

16    scienter, and (3) loss causation.  Each is an independent basis for dismissal.  Because Plaintiff

17    fails to state a Section 10(b) claim, his claims under Section 20 of the Exchange Act also fail.

18         Defendants' Motion is based on this Notice of Motion and Motion to Dismiss, the

19    following Memorandum of Points and Authorities, Defendants' Request for Incorporation by

20    Reference and Judicial Notice, the concurrently submitted Declaration of Daniel R. Gherardi ,

21    the complete files and records in this action, and any additional material and arguments as may

22    be considered by the Court in connection with the hearing on the Motion.  Through this Motion,

23    Defendants seek an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the

24    Complaint for failure to state a claim upon which relief can be granted.

25          **ISSUE TO BE DECIDED**

26         Whether the Court should dismiss the Complaint for failure to state a claim upon which

27    relief can be granted for violation of Sections 10(b) and 20 of the Exchange Act, including for

28    failure to adequately plead falsity, scienter, and loss causation?

I.       **INTRODUCTION**

This is not a typical securities fraud action.  Enphase—a global leader in energy management technology—has revolutionized the solar industry with its microinverter technology and fully integrated solar-plus-storage solution.  Enphase has suffered no corporate setback.  It has not delivered disappointing guidance, missed its existing earnings guidance, or failed to grow in line with the market's expectations.  It has not restated any of its financials.  No independent auditor has challenged its financial statements or its accounting practices.  No regulator has taken issue with its business practices or public statements.  To the contrary, Enphase has a consistent record of growth and business execution.  Enphase's revenues have grown from $286 million in 2017 to over $774 million in 2020.  It has cut costs and improved margins, and its market share has increased substantially.  The market has rewarded these successes.  Enphase's stock price has increased from $8.09 on February 26, 2019, to $212.07 on January 22, 2021, when the Complaint was filed.  Recognizing this success, Enphase was recently added to the S&P 500 stock index.

This case has arisen entirely because of a "short report" filed in June 2020 by Prescience Point Capital Management ("Prescience"), an investment company that has, by its own admission, a vested interest in forcing down Enphase's stock price.  This was not the first time Prescience had filed such a report.  In July 2018, Prescience claimed Enphase was overpriced at $6.62 per share, admitted it had a stock bet against the Company, and predicated a collapse to a proper value of $1.01 per share.  Since then, far from collapsing, Enphase's stock price has continued to rise as business performance has improved and Enphase's revenues and margins have grown.  Nevertheless, on June 17, 2020, Prescience issued a second "report" again accusing the Company of the same sort of fraud it had two years earlier, and claimed that Enphase's stock had zero value and should be "delisted."  This report caused a short-lived stock drop of more than 20% (from $52.76 to $39.04) on June 17, 2020, precisely the outcome Prescience hoped for.  After the initial drop, however, the market quickly re-evaluated these claims and within a month the stock price had recovered entirely (which, under well-settled law limits, if not eliminates, the putative class's damages, *see* 15 U.S.C. § 78u-4(e) (creating ninety-day bounce back limitation

1   on damages); *In re Comms.' Sys., Inc.*, 2003 WL 21383824, at *2-3 (N.D. Cal. Feb. 24, 2003)

2   (discussing ninety-day bounce back rule as limitation on damages)).  By the end of the year, less

3   than six months later, Enphase had eclipsed its earlier stock price by more than $100 per share,

4   ending the year at $175.47.  It has continued to go up since.

5       Notwithstanding the quick (and total) recovery of the stock price, Plaintiff has asserted

6   this class action for securities fraud.  This has become an increasingly common practice—short

7   sellers issue dramatic but unsubstantiated "reports" with vague claims of fraud.  These reports

8   cause temporary stock drops, which are followed almost immediately by shareholder lawsuits,

9   irrespective of whether the claim of fraud is substantiated or the stock price recovers.  The courts

10  of this district, however, have repeatedly concluded that such self-interested short reports, issued

11  by those who have a financial interest in a company's stock declining (even if only in the short-

12  term) are not a sufficient basis to support a securities fraud claim under the rigorous standards

13  imposed by the PSLRA.  That is all there is here.  And, as a result, the Complaint does not allege

14  facts sufficient to establish any of the elements of securities fraud, much less all of them.

15      First, Plaintiff has not sufficiently alleged any materially false or misleading statement of

16  fact.  Plaintiff copies Prescience's allegations that Enphase's publicly filed financial results from

17  the fourth quarter of 2018 to the first quarter of 2020 misstated revenues, gross margins, cash

18  flows, and earnings per share.  Plaintiff offers not one particularized allegation to support these

19  accusations, and his assertion that he disagrees with Enphase's accounting judgments is not

20  enough.  Plaintiff cites Prescience's purported "investigation," but that second-hand hearsay—

21  which provides no specific facts about the accounting issues, does not identify the employees or

22  their roles in the Company, or even the relevant time frame when they worked at Enphase—does

23  not come close to meeting the standard imposed by the PSLRA to support a claim.

24      Second, Plaintiff's scienter allegations are even more deficient.  Plaintiff does not plead

25  any particularized facts that would support the conclusion that the Individual Defendants

26  (Enphase's Chief Executive Officer and Chief Financial Officer) have ever believed that

27  Enphase's accounting or other public statements were incorrect.  The Complaint does not contain

28  a single allegation that any member of Enphase's senior management was told by anyone, much

less a qualified, informed employee, that Enphase's accounting was improper.  Nor does the
Complaint address why, given Prescience's repeated public accusations, Enphase's auditor has
consistently approved its financial statements.  The "stock sale" allegations do not remedy this
deficiency.  Many of the sales are simply irrelevant, and do not involve Defendants or are clearly
normal course.  Even putting these failings aside, these allegations take the typical narrative—
*e.g.*, insiders who are uniquely aware of inside information and sell stock ahead of the
company's release of that information to avoid losses—and turn it entirely on its head.  Here,
each insider who sold stock would have made far more money—doubling or tripling their
gains—if they had simply held the stock until the end of the year.  And Plaintiff does not plead
any basis to believe that anyone internal to the Company was aware that an external third party
short report would be issued weeks later.  Simply put, these facts do not create any inference of
scienter, much less a "compelling inference" as required under the PSLRA's heightened pleading
standard.

Third, and finally, Plaintiff has not adequately pleaded loss causation because he has not
identified a "corrective disclosure."  Plaintiff bases his entire case on Prescience's June 17, 2020
report, but admits that Prescience relied on public information to attack Enphase.  Negative
repackaging of already public facts is not corrective.  Under well-settled law, Prescience's
addition of supposed interviews with unidentified former Enphase employees in India does not
cure this fatal flaw.  Plaintiff's Complaint should be dismissed in its entirety.

## II.   BACKGROUND

***Enphase and Defendants***.  Enphase is a corporation headquartered in Fremont,
California with principal engineering operations in Fremont, California.  Ex. A at 4, 35.  Enphase
delivers smart, easy-to-use solutions that manage solar generation, storage and communication
on one intelligent platform.  AC ¶¶ 2, 35.  Enphase produces a fully integrated solar-plus-storage
solution consisting of four key components—microinverters, batteries, the Envoy
Communications Gateway, and Enlighten cloud-based software.  *Id.* ¶ 2; Ex. B at 7.  Enphase's
microinverters convert sunlight captured from solar panels into the form of electricity used in
homes, and its related products provide the most advanced personalized energy monitoring and

control in the industry.  *See* Ex. A at 5.  Enphase's microinverters are unique in that they operate independently for each solar panel, maximizing energy production by focusing on panels absorbing the most sunlight and reducing dependence on shaded or malfunctioning panels.  *See id.*  Enphase sells primarily to solar distributors that then resell to installers and integrators who offer Enphase's products to residential and commercial system owners.  Ex. A at 7.  Enphase also sells directly to large installers, original equipment manufacturers, strategic partners, and homeowners.  *Id.*  Enphase has shipped more than twenty-five million microinverters and over one million residential and commercial systems have been deployed in more than 130 countries. Ex. A at 4.  Enphase's stock trades on the NASDAQ under the symbol ENPH.  AC ¶ 35.

Defendant Badrinarayanan Kothandaraman joined Enphase as the Chief Operating Officer in April 2017 and became the Chief Executive Officer ("CEO") on September 6, 2017. AC ¶ 6.  Prior to joining Enphase, Kothandaraman—who holds eight patents—spent two decades in leadership and engineering roles at Cypress Semiconductor.  Ex. C at 10. Upon becoming the CEO, Kothandaraman implemented cost-cutting measures with the goal of making Enphase profitable within his first eighteen months as CEO.  AC ¶ 57.  Defendant Eric Branderiz joined Enphase as the Chief Financial Officer in 2018.  *Id.* ¶ 37.

Enphase has achieved strong and consistent growth.  The Company more than doubled its unit sales from 2.8 million in 2018 to 6.2 million in 2019, and correspondingly nearly doubled its revenues from $316.2 million in 2018 to $624.3 million in 2019.  *Id.* ¶ 13; Ex. A at 44.  And Enphase's revenues continued to grow in 2020 to over $774 million.  Ex. D at 54.  A "key factor" in this growth was the launch of its IQ 7 series of microinverters, which have higher product margins than previous models and therefore decreased Enphase's cost of revenue per unit.  Ex. A at 6, 40, 44.  In fiscal year 2019, 98% of Enphase's microinverter shipments were the IQ 7 series, compared to only 50% in 2018.  *Id.* at 44.  Consistent with accounting principles generally accepted in the United States ("GAAP"), Enphase recognizes revenue for sales of its products like its microinverters when the products are shipped to customers.  *Id.* at 49, 66, 74. For products and services delivered over time, revenue is deferred and recognized over the estimated service period.  *Id.*  Enphase informed investors that the preparation of its financial

statements requires Enphase "to make judgments, estimates and assumptions that affect the reported amounts of assets, liabilities, revenue and expenses, and related disclosure of contingent assets and liabilities." *Id.* at 49.

*Prescience Publishes First Short Report*.  On July 25, 2018, Prescience—a short-interest holder in Enphase who had bet against Enphase's stock price and so had a financial interest in Enphase's stock price declining—published an initial report "questioning the validity of Enphase's financial reporting."  AC ¶ 81; Ex. E.  That initial report was "updated" a few weeks later on August 15, 2018 with additional conclusory accusations of improper financial reporting by Enphase.  Ex. F.   Prescience concluded that Enphase's fabricated revenues were the cause of its increase in stock price in 2018, and valued Enphase shares using its supposed "actual" financial results at $1.01 per share, an 84.7% downside from its then-current price.  Ex. E at 35-36.  But Prescience claimed that even that valuation was "too generous" and predicted "further downside."  *Id.* at 36.  Despite Prescience's reports, Enphase continued to succeed.  And as even Prescience admits, since it began issuing reports on Enphase, Enphase's independent auditor Deloitte & Touche LLP ("Deloitte") and regulatory authorities has not questioned the validity of Enphase's financial statements, and Enphase has not restated its financials.  Ex. 1, at 5.

*Prescience Publishes Second Short Report*.  On June 17, 2020, Prescience published another report ("Prescience Report") asserting again that Enphase was engaging in improper deferred revenue accounting to inflate its revenues and gross margins.  AC ¶¶ 8, 17; Ex. 1 at 1, 4.  Prescience claims to have "determined" that Enphase's financial statements were fraudulent.  AC ¶ 12.  But Prescience's support for that determination is a supposed "examination" of Enphase's public financial filings and a vaguely referenced "investigation" involving alleged "interviews" with unidentified "former employees" from Enphase's India office and comparison to Enphase's competitors' financial results.  *See* Ex. 1.  Since the Prescience Report, Enphase has not restated its financial statements, and no regulator or auditor has questioned such financial results.

*Enphase Continues to Shine*.  Although the Prescience Report led to a temporary stock drop from $52.76 on June 16, 2020 to $39.04 on June 17, 2020, other than this temporary decline, Enphase has only continued to soar.  Enphase still has not restated its financial

1    statements and no auditor or regulator has raised any question about Enphase's financial results.

2    Enphase's stock price rose from $1.11 on September 6, 2017 when Mr. Kothandaraman became

3    CEO to $52.76 the day before the Prescience Report.  Ex. G.  And it rebounded completely from

4    the $39.04 per share price caused by the Prescience Report's accusations to $54.93 just three

5    weeks later on July 8, 2020.  *Id.*  Other than the temporary blip caused by the Prescience Report,

6    Enphase's stock price has only increased, reaching $212.07 per share on January 22, 2021, the

7    date when the amended Complaint was filed.  *Id.*  Even in the face of a global pandemic,

8    Enphase has continued to take the solar industry by storm achieving explosive results in 2020,

9    even amidst a global pandemic.  Ex. D.

10   **This Lawsuit**.  Plaintiff filed his original complaint *on the same day* as the Prescience

11   Report, June 17, 2020.  Dkt. No. 1.  On November 30, 2020, the Court appointed lead plaintiff

12   and lead counsel.  Dkt. No. 49.  The Complaint was filed on January 22, 2021.  Dkt. No. 52.

13   **III.    LEGAL STANDARD**

14   To state a claim for securities fraud under Section 10(b) and Rule 10b-5, Plaintiff must

15   adequately plead (1) a material misrepresentation or omission of fact, (2) scienter, (3) a

16   connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss

17   causation.  *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012); *In re Nektar*

18   *Therapeutics*, 2020 WL 3962004, at *9 (N.D. Cal. July 13, 2020).  The PSLRA's specificity

19   requirement "prevents a plaintiff from skirting dismissal by filing a complaint laden with vague

20   allegations of deception unaccompanied by a particularized explanation stating *why* the

21   defendant's alleged statements or omissions are deceitful."  *Metzler Inv. GMBH v. Corinthian*

22   *Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  And Rule 9(b) requires that a party alleging

23   fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).

24   When resolving a motion to dismiss for failure to state a claim, the Court may consider

25   documents referenced in the complaint and documents that form the basis of Plaintiff's claims.

26   *See City of Dearborn Heights Act 345 Policy & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d

27   840, 848 (N.D. Cal. 2014).  Additionally, the Court may consider certain matters that are

28   properly the subject of judicial notice.  *See id.*; *see also Khoja v. Orexigen Therapeutics, Inc.*,

1    899 F.3d 988, 998 (9th Cir. 2018) (recognizing that incorporation by reference and judicial

2    notice "permit district courts to consider materials outside a complaint").

3    **IV.    ARGUMENT**

4         **A.    Plaintiff Fails to Plead a Materially False or Misleading Statement**

5              Plaintiff claims that Enphase's financial statements, as well as accompanying

6    certifications by Enphase executives, in six quarterly and two annual financial statements (and

7    one investor presentation) were false or misleading due to (1) deferred revenue accounting,

8    (2) tariffs on solar products manufactured in China, (3) a supposed related party transaction, (4) a

9    shrinking market share, and (5) "fabricated" safe harbor revenues.  AC ¶¶ 164-219.  Plaintiff

10   does not allege facts sufficient to state a claim that any challenged statement was false.

11              **1.    Disagreement With Accounting Decisions Does Not Render Them**
12                      **False**

13             Plaintiff alleges that Defendants' accounting judgments are incorrect, and therefore

14   constitute "false statements of fact" under the securities laws.  AC ¶¶ 164-219.  It is well settled

15   under the PSLRA, however, that simply asserting that a party's unrestated accounting is wrong

16   does not plead a false statement under the securities laws.  *See In re Redback Networks, Inc. Sec.*

17   *Litig.*, 2007 WL 963958, at *5 (N.D. Cal. Mar. 30, 2007) (noting that "[i]n all of the cases in

18   which the reporting of revenues gave rise to a viable § 10(b) claim, there was either a restatement

19   of revenues or the court determined that fraudulent revenue recognition had been pled"); *see also*

20   *In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 985-86 (N.D. Cal. 2007) (holding that

21   plaintiffs failed to allege audited financial statements were materially false or misleading where

22   they were not restated); *Deason v. Super Micro Computer, Inc.*, 2017 WL 4355128, at *2 (N.D.

23   Cal. Sept. 29, 2017) (finding no material misrepresentation or omission where there was no

24   restatement of audited financial statements); *see also Turner v. MagicJack VocalTec, Ltd.*, 2014

25   WL 406917, at *9 (S.D.N.Y. Feb. 3, 2014) (holding that plaintiffs failed to plead falsity where

26   "there has been no restatement, [defendant's] auditor issued opinions that the financial

27   statements were prepared in accordance with GAAP, and [defendant] and its auditors support the

28   accounting position in the financial statements"); *City of Roseville Emps.' Ret. Sys. v. Sterling*

1   *Fin. Corp.*, 963 F. Supp. 2d 1092, 1113-14 (E.D. Wash. 2013) (dismissing securities fraud

2   complaint where plaintiff failed to plead falsity given no restatement of financial statements,

3   consistent unqualified opinions from auditors, and no regulator action requiring restatement); *In*

4   *re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 894 (W.D.N.C. 2001) (dismissing

5   complaint where there were no facts alleged to identify any misstatement in financial statements

6   given a clean audit opinion by independent auditor).

7        These holdings are consistent with the long settled proposition that the federal securities

8   laws require allegations reflecting a false statement of *fact*, *Omnicare, Inc. v. Laborers Dist.*

9   *Council Const. Indus. Pension Fund*, 575 U.S. 175, 183-84 (2015); *In re Nektar Therapeutics*,

10   2020 WL 3962004, at *9 (N.D. Cal. July 13, 2020) (distinguishing between inactionable

11   statement of opinion rather than "knowingly false statement of fact"), and accounting judgments

12   under GAAP as embodied in a company's financial statements constitute statements of opinion.

13   *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at *12-13 (S.D.N.Y. Sept. 9, 2019)

14   (holding that where financial statements "reflect a result achieved by applying judgments to

15   objective historical facts," they "reflect[] an opinion"); *see also Rieckborn v. Jefferies LLC*, 81 F.

16   Supp. 3d 902, 921-22 (N.D. Cal. 2015) (considering financial result resulting from accounting

17   judgments as statement of opinion); *Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 243

18   (S.D.N.Y. 2015) (assessing falsity of "subjective accounting choices" under principles of

19   statements of opinion); *In re MF Global Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 312-15

20   (S.D.N.Y. 2013) (assessing falsity of deferred tax revenues under opinion statement principles

21   because statements concerned "accounting practice[s] involv[ing] estimates of subjective

22   values"); *In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1457 (N.D. Cal. 1996) ("GAAP is not

23   a set of rules ensuring identical treatment of identical transactions; rather, it tolerates a range of

24   reasonable treatments, leaving the choice among alternatives to management.").

25        To establish the falsity of such statements of opinion, Plaintiff "must do more than

26   simply allege that the conclusions were wrong." *In re AmTrust*, 2019 WL 4257110, at *25.

27   Rather, to plead that an opinion constitutes a "false statement of fact" under the federal securities

28   laws, a plaintiff must plead particularized facts showing *both* that the opinion was objectively

wrong (inaccurate) and that a defendant did not believe the opinion at the time (or had no basis whatsoever to believe it).  *Omnicare*, 575 U.S. at 183-85; *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017).  Plaintiff does not come close to meeting either prong of this standard.  Plaintiff does not set forth any facts explaining what Enphase's accounting decisions were, much less why and how those decisions were both objectively wrong and subjectively false.  *Omnicare*, 575 U.S. at 183-85.

For example, Plaintiff claims Enphase's recognition of deferred revenue is wrong, but pleads no facts that would suggest that the application of the relevant accounting standards (ASC 606) by Enphase and its auditor was objectively wrong.  AC ¶ 132.  Nor does he plead any facts that would suggest that Defendants did not subjectively believe in the accuracy of Enphase's financial statements (that is, either knowingly false or so without basis that they were effectively false).  To the contrary, Plaintiff does little more than piggyback on Prescience's self-interested assertion that Enphase's revenues were "improper" without even offering an explanation for what they should have been, or why it is that they were not within the realm of reasonable results from the application of GAAP accounting standards.  That is insufficient to state a claim.  *See In re Rackable Sys., Inc. Sec. Litig.*, 2010 WL 3447857, at *7 (N.D. Cal. Aug. 27, 2010) (rejecting securities fraud claim where the plaintiff had "not alleged with particularity any facts to refute [the company's] explanations" for its accounting decisions).

The same is true for Plaintiff's allegation that Enphase's stated "safe harbor" revenues and accounts receivable did not "add up."  AC ¶¶ 157-58, 214-15.  "Safe harbor" revenues are those from purchases by customers seeking to "preserve the historical 30% investment tax credit for solar equipment purchased in 2019 for solar projects that are completed after December 31, 2019."  Ex. A at 40.  Plaintiff admits that multiple companies saw a massive increase in distributor purchases in late 2019 due to imminent step downs in solar tax credits.  AC ¶¶ 155-56.  And Plaintiff does not offer any particularized facts explaining why Enphase's recognition of safe harbor revenues and statement of accounts receivable were not accurate or otherwise reasonable accounting judgments.

1    Similarly, Plaintiff claims that Enphase's increased gross margins "should have been

2    nearly impossible," AC ¶¶ 115-20, 171, but once again offers little more than incredulity to

3    support the assertion of fraud.  Particularly given Enphase's robust explanation for its increased

4    margins in its public filings, which the Complaint does not meaningfully address, this is plainly

5    insufficient.  *See Rackable*, 2010 WL 3447857, at *7; Ex. A at 6, 40, 44 (discussing increased

6    sales of new IQ 7 microinverter that has significantly higher margins).  And it is only more

7    insufficient in the face of financial statements that have been the subject of multiple audits and

8    quarterly reviews, and that have not been questioned by anyone other than Plaintiff and

9    Prescience.  *See Turner*, 2014 WL 406917, at *9 (rejecting falsity allegations where "there has

10   been no restatement, [defendant's] auditor issued opinions that the financial statements were

11   prepared in accordance with GAAP, and [defendant] and its auditors support the accounting

12   position in the financial statements"); *First Union*, 128 F. Supp. 2d at 894.

13   Plaintiff's assertions regarding the acquisition of ActivStor, a company purportedly co-

14   founded by an Enphase Vice President, Jithender Majjiga, are even more far-fetched.  AC

15   ¶¶ 160-63, 172, 210.  Plaintiff does not provide any details about the value of the transaction that

16   would establish its materiality.  Plaintiff misleadingly refers to an *unrelated* $15 million

17   acquisition of SunPower's microinverter business, but does not provide any fact about the value

18   of the ActivStor transaction that would allow the Court to infer that it was material.  *See ECA,*

19   *Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 202 (2d

20   Cir. 2009) (affirming dismissal of securities fraud complaint where plaintiff failed to "allege

21   facts showing that [defendant's purported related-party] transaction . . . were 'material,' because

22   the disclosure requirements of [the financial accounting standards board] only relate to material

23   related-party transactions").  Nor does he plead any particularized fact suggesting Mr. Majjiga

24   "directly or indirectly . . . controls" either ActivStor or Enphase.  *Lewy v. SkyPeople Fruit Juice,*

25   *Inc.*, 2012 WL 3957916, at *18 (S.D.N.Y. Sept. 10, 2012).  Absent allegations of materiality or

26   control, there is no basis to suggest the existence of a material false statement.  *Id.* at *18-19.

27   Finally, Plaintiff's claims that Enphase's financial statements are "irreconcilable" with a

28   purportedly decreasing market share are equally baseless.  *See* AC ¶¶ 176, 183, 190, 201, 203.

Plaintiff pleads no particularized facts to support those accusations, and does nothing more than reference figures from Wood Mackenzie, an entity that collects information from only around half of the U.S. solar market.  Those figures indisputably do not capture an accurate picture of Enphase's market share because they are based solely on installation data.  *Id.* ¶ 102.  Even Plaintiff admits that "80% of Enphase's 2019 revenue came from sales to distributors," *id.* ¶ 111, and distributors are not end-users and therefore would not be measured in installations.  Ex. A at 7 ("We sell our solutions primarily to solar distributors ***who resell to installers***.") (emphasis added).  In any event, Plaintiff's difference of opinion about a subjective metric such as market share does not render Enphase's audited financial statements misleading.  *See City of Dearborn Heights*, 65 F. Supp. 3d at 852-53 (rejecting plaintiff's allegation that impairment analysis in financial statement was false when based solely on plaintiff's "own calculation" of what value "should have been" representing only "a difference of opinion" over that value); *see also Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 173 (S.D.N.Y. 2015) (dismissing securities fraud action for failure to allege a misstatement of fact where plaintiff "at best [] alleges a difference of opinion" based on disagreement with financial assumptions and inputs without "specifically [] identify[ing] the basis for that disagreement).

### 2. Plaintiff's Third-Hand "Confidential Witnesses" Do Not Establish a False Statement of Fact

Nothing in Plaintiff's reliance on Prescience's purported "investigation" involving "interviews" with unidentified "former employees" in Enphase's India office changes the conclusion that he has not adequately pleaded any actionable false statements.  *See, e.g.*, AC ¶¶ 8, 18, 84, 89 (referring to unnamed former employees' purported accusation that Enphase's revenues were "fabricated").  It is well settled confidential witnesses "must be described with sufficient particularity to establish their reliability and personal knowledge." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).  Likewise, any statements attributed to a confidential witness already determined to be sufficiently reliable and knowledgeable "must themselves be indicative of falsity."  *Id.*; *see also Kipling v. Flex, Ltd.*, 2020 WL 7261314, at *10 (N.D. Cal. Dec. 10, 2020).  When a plaintiff relies on third-hand "sources" that it did not vet

1   directly, a plaintiff faces particular burdens in establishing that these criteria have been met.

2   Specifically, the court in *Long Miao v. Fanhua, Inc.*, detailed the "four contexts in which courts

3   have been loathe . . . to sustain as sufficiently particular securities fraud complaints based on

4   uncorroborated statements by CWs":

> First, courts generally have not credited the statements of CWs
> who are insufficiently described or whose descriptions do not
> suggest that they had been in position to know the facts attributed
> to them.  Second, statements of CWs that cannot situate in time
> relevant occurrences . . . cannot establish that the challenged
> statements were knowingly false when made.  Third, allegations by
> CWs that are insufficiently particular are apt to be discounted or
> disregarded.  Fourth, courts have tended not to credit
> uncorroborated statements of CWs who are sources secondhand—
> with whom plaintiffs' counsel have not themselves interacted.

11   442 F. Supp. 3d 774, 798-900 (S.D.N.Y. 2020).

12          Here, Plaintiff's allegations fail for each of these reasons.  First and foremost, the

13   assertions attributed to the former employees are vague and conclusory at best—far from

14   particularized allegations corroborated by facts that might lend to the reliability of the

15   confidential witness.  *See, e.g.*, AC ¶ 89 (making vague allegations that results were "fabricated"

16   without any detail about what made them wrong or how they violated applicable accounting

17   rules).  Nothing in the material cited in the Prescience Report or in the Complaint provides any

18   detail about what the former employees claim was "fabricated" in Enphase's financial

19   statements, and the former employee accusations lack any reliability.  *See Kipling*, 2020 WL

20   7261314, at *11 (rejecting CW allegations that "used vague language like 'improperly'"); *SEB*

21   *Inv. Mgmt. AB v. Symantec Corp.*, 2019 WL 2491935, at *5 (N.D. Cal. June 14, 2019)

22   (dismissing securities fraud action where confidential witness allegations were too vague to

23   support plaintiff's claim of accounting impropriety).  In other words, even if taken as statements

24   from employees who had a proper foundation (there is no reason to believe they were) and

25   during the proper time (again, there is no basis to make that assumption), they are insufficiently

26   particularized to even establish any specific problem with Enphase's accounting or financial

27   results.  *See SEB*, 2019 WL 2491935, at *5 (rejecting confidential witness allegations of "a

28   bunch of" or "numerous" instances of purported fraud).

1    Second, Plaintiff does not even attempt to allege that such "former employees" were in a

2    position to be aware of the basis for Enphase's financial results, much less were aware of

3    specific facts that rendered those results improper.  *See Kipling*, 2020 WL 7261314, at *11

4    (rejecting confidential witness allegations where, *inter alia*, plaintiff "fail[ed] to state that CWs

5    were connected to defendant's allegedly fraudulent project"); *Nektar*, 2020 WL 3962004, at *10

6    (requiring allegations that confidential witness was in position to possess information alleged).

7    As the court held in *Brodsky v. Yahoo! Inc.*, for confidential witness statements regarding

8    purported accounting fraud "to carry any weight . . . Plaintiff[] must describe with particularity

9    the CW's personal knowledge of [the company's accounting] process" and "decisions."  630 F.

10   Supp. 2d 1104, 1115 (N.D. Cal. 2009).  Plaintiff has not done so, and therefore, "[t]he Court has

11   no basis to determine whether" the former employees' suppositions "satisfy the pleading

12   requirement under the PSLRA."  *Id.*

13       Third, Plaintiff has not made any effort to allege *when* these individuals were employed

14   by Enphase, meaning there is no indication that any of them were employed during the period

15   relevant to the challenged statements.  *See Kipling*, 2020 WL 7261314, at *11 (rejecting

16   confidential witness allegations where they "lack the specificity in time, context, and details that

17   courts have frequently required as indicia of reliability") (internal citation omitted); *Long Miao*,

18   442 F. Supp. 3d at 799 (requiring confidential witness allegations to be "situate[d] in time"

19   compared to "relevant occurrences"); *Zucco*, 552 F.3d at 996 (rejecting allegations where

20   confidential witnesses "were not employed . . . during the time period in question").

21       Finally, Plaintiff's counsel here has copied and pasted uncorroborated allegations from

22   unnamed informants to whom counsel has never spoken.  Courts have consistently found such

23   allegations insufficient to allege a false statement.  *Long Miao*, 442 F. Supp. 3d at 801, 804

24   (citing cases and rejecting allegations based on short seller report that relied on anonymous

25   sources where "plaintiff's counsel in this case appear to have done nothing whatsoever to

26   confirm the identities or statements of the confidential sources cited in the [short report]").  "In

27   that circumstance, the risk of motivated reporting by the author of the short-seller report is

28   twinned with the reliability concerns presented by anonymous sourcing."  *Id.* at 801.  This is

precisely the scenario at issue here.  Prescience admittedly bet against Enphase's stock price, and issued a report based entirely on accusations from unidentified "former employees."  Plaintiff and his counsel do not purport to have *ever communicated* with any of the alleged former employees, much less know who these individuals even are.  It is therefore "inappropriate to give any weight to these alleged confidential witness statements" that are "without independent corroboration."  *Id.* at 800 n.22 (citation omitted); *see also Nektar*, 2020 WL 3962004, at *10 (where short seller "stood to benefit from a poor performance" and plaintiffs lacked information why short seller's opinions were "reliable," plaintiffs "fail[ed] to sufficiently show that the Report supports their allegations of falsity").

### 3.      Plaintiff's SOX Certification Allegations Also Fail

Because Plaintiff has not identified any false statement of Enphase's accounting or financial results, his challenge to Sarbanes-Oxley ("SOX") certifications signed by Individual Defendants stating their belief that Enphase's financial statements did not include material untrue statements or omissions and "fairly present[ed] . . . [its] financial condition" also fail. AC ¶¶ 173, 180-81, 187-88, 194-95, 211-12, 218-19.

### B.      Plaintiff Fails to Plead Scienter

Plaintiff also fails to plead facts that would give rise to a "strong inference" of scienter. *Metzler*, 540 F.3d at 1061.  The facts alleged "must not only be particular, but also must strongly imply [the defendants'] *contemporaneous* knowledge that the statement was false when made." *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1102 (C.D. Cal. 2003).

Plaintiff's allegations do not meet this standard.  There are no particularized allegations that (even if true) would create any inference (much less a strong inference) that any Defendant believed that Enphase had overstated its revenues (it hadn't), otherwise had (or has) misstated financial statements or other accounting, or made any other false statement.

### 1.      Plaintiff's Scienter Allegations Are Insufficient

Plaintiff's scienter arguments largely boil down to allegations, based entirely on vague assertions from purported "former employees" that Defendants were engaged in accounting fraud.  As noted above, those allegations fail for a variety of reasons—lack of specificity in the

allegations themselves, lack of specificity with respect to the roles of the employees or even dates of employment, and a complete absence of any indication that any of them communicated specific information to senior managers genuinely calling Enphase's financial results into question.  Indeed, as noted above, Plaintiff has failed entirely to plead facts from which one could conclude that Enphase's accounting judgment was either objectively false (incorrect) or subjectively false (that is, that any senior official at Enphase didn't believe they were correct).  For the same reasons, Plaintiff's scienter allegations fail.

First, Plaintiff alleges that former employees reported to Prescience that the Individual Defendants directed the Company's accounting practices and that Mr. Kothandaraman "micromanaged" "everything."  AC ¶¶ 150, 221, 234.  But even putting aside that the conclusory references to "former employees" fail to meet the standard for "confidential witnesses," Plaintiff pleads no particularized facts that would demonstrate (even if true) that the "micromanaging" amounted to fraud or anything like it.  *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1207 (9th Cir. 2016) (scienter allegations fail absent "role of the individual defendants in preparing the company's accounting statements"); *In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1046-47 (N.D. Cal. 2009) (rejecting as conclusory allegations that confidential witnesses suggested that defendants "must have known" about purported fraud,  without "specifically t[ying] any Defendant to the accounting determinations at issue").

Second, Plaintiff alleges that the fact that Mr. Kothandaraman's compensation included grants of equity apparently indicates that he was motivated to inflate Enphase's stock price.  AC ¶¶ 237-47.  But virtually every public-company executive receives stock-based compensation, and stock-based compensation has consistently been rejected as any basis to infer scienter.  *See Rigel*, 697 F.3d at 884 ("[I]t is common for executive compensation, including stock options and bonuses, to be based partly on the executive's success."); *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1045 (S.D. Cal. 2014) ("[I]f the existence of performance-based compensation and motive to increase short-term profits were enough to establish scienter, scienter could be found for almost any executive.").

1      Third, Plaintiff claims responses by non-defendant Raghuveer Belur, Enphase's co-

2  founder and Chief Products Officer, to questions about the Prescience Report on the very day the

3  report was published were "evasive." AC ¶¶ 248-56. But Mr. Belur's responses were not

4  evasive at all. He responded to the questions asked with details about how Enphase tracks its

5  sales channels, how Enphase recognizes revenue, and that to increase gross margins, Enphase

6  has "increased its 'leverage' with suppliers" and worked to bring costs down. *Id.* And Mr. Belur

7  denied any sort of accounting impropriety in his responses and noted that Prescience's logic on

8  deferred revenues did not make sense. *Id.* In any event, Plaintiff's suggestion that Enphase was

9  evasive in responding to questions about the Prescience Report is simply misleading and

10  irrelevant to the Individual Defendants' scienter.

11      Fourth, in attempting to assert scienter, the Complaint makes vague reference to accounts

12  receivable as a "signal" of fraud. AC ¶¶ 257-60. Plaintiff asserts that after Mr. Kothandaraman

13  "took the helm at Enphase" the time before which accounts receivable were paid increased from

14  55.6 days to 71.8 days. AC ¶¶ 259-60. But Plaintiff never explains how this increase renders

15  any accounting incorrect, much less materially so or fraudulent. In other words, nothing about

16  Plaintiff's allegations even suggests a GAAP violation, much less an inference of scienter based

17  on other vague and unrelated allegations of accounting fraud. These assertions are anything but

18  "cogent" and do not create a *strong inference* of scienter. *Metzler*, 540 F.3d at 1066.

19      Finally, Plaintiff simply asserts that the Individual Defendants must have known of the

20  alleged fraud "by virtue of their receipt of information reflecting the true facts regarding

21  Enphase." AC ¶ 220. Here, however, Plaintiff has never even articulated in any meaningful way

22  what the alleged fraud was, much less that senior offers had to know about "it" (whatever it

23  was). Even putting that aside, it is well settled that absent allegations of "specific information

24  conveyed to management and related to the fraud," knowledge of "the day-to-day workings of

25  the company's business does not establish scienter." *Veal v. LendingClub Corp.*, 423 F. Supp.

26  3d 785, 816 (N.D. Cal. 2019); *Metzler*, 540 F.3d at 1068 (rejecting scienter allegations based on

27  "corporate management's general awareness of the day-to-day workings of the company's

28  business . . . absent some additional allegation of specific information conveyed to management

1   and related to the fraud"); *see also Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051,

2   1062-63 (9th Cir. 2014) (affirming district court's dismissal of securities fraud class action,

3   observing "[m]issing are allegations linking specific reports and their contents to the

4   executives").  The Complaint makes no effort to allege what information the Individual

5   Defendants were supposed to have received, and Plaintiff's conclusory catch-all that Defendants

6   must have known is insufficient to establish scienter.

7                   **2.       Insider Stock Sales Do Not Establish Scienter**

8           Plaintiff also urges this Court to draw an inference of scienter based on stock sales by

9   certain Enphase insiders in the months before the Prescience Report.  Specifically, Plaintiff

10  points to stock sales by eight Enphase "insiders"—four officers, three directors, and Enphase's

11  former largest shareholder.  AC ¶¶ 222-32.  But seven of these eight insiders are not named as

12  defendants in this action, and Plaintiff has not alleged any facts indicating that their sales are

13  suspicious in any way.  It is well settled that allegations of insider sales by individuals who are

14  not defendants are completely irrelevant to scienter.  *Wozniak v. Align Tech., Inc.*, 2011 WL

15  2269418, at *14 (N.D. Cal. June 8, 2011) ("Sales by insiders not named as defendants, however,

16  are irrelevant to the determination of the named defendant's scienter.").

17          As to the only actual Defendant in this action, while Plaintiff points to stock sales by Mr.

18  Branderiz on June 3, 2020, Plaintiff does not offer a single alleged fact indicating that Mr.

19  Branderiz's stock sale was "unusual" or "suspicious" in any way.  *See In re Pixar Sec. Litig.*, 450

20  F. Supp. 2d 1096, 1104 (N.D. Cal. 2006).  And Plaintiff does not allege any fact establishing that

21  Mr. Branderiz (or any other Enphase insider) actually knew that Prescience was going to issue its

22  report, much less what it would say.  Moreover, Mr. Branderiz sold less than one-third of his

23  Enphase holdings, *see* Ex. H (noting over 300,000 shares still held after transaction), and

24  Plaintiff does not allege that the only other Individual Defendant, Mr. Kothandaraman, sold any

25  stock in the relevant period leading up to the alleged corrective disclosure, negating any

26  inference of scienter.  *See Metzler*, 540 F.3d at 1067 (where one defendant made no sales and

27  another only 37%; noting that "[w]e typically require larger sales amounts—and corroborative

28  sales by other defendants—to allow insider trading to support scienter").

1   Rather, Plaintiff's theory is exactly *backwards*.  Given that insiders who sold stock prior

2   to the Prescience Report would have at least *quadrupled* the value of their shares by *not* selling,

3   Plaintiff's theory that insiders sold off their stock knowing that Enphase was a house of cards

4   that would come tumbling down simply does not hold water.  This is doubly true given that the

5   Complaint does not include a single fact suggesting that anyone at Enphase (much less those that

6   traded) had any inkling that Prescience was preparing its hit piece.

7   Indeed, the far more reasonable inference is that Prescience—a third party with a

8   financial interest in causing Enphase's stock price to fall (Ex. 1, at 22-23)—noticed these

9   publicly disclosed stock sales, saw an opportunity to mischaracterize them in order to further

10   manipulate Enphase's stock price and profit handsomely.

11   **C.      Plaintiff Fails to Plead Loss Causation**

12   Plaintiff also fails to plead loss causation, which requires a showing that "the revelation

13   of [the alleged] misrepresentation or omission was a substantial factor in causing a decline in the

14   security's price, thus creating an actual economic loss for the plaintiff."  *Mulquin v. Nektar*

15   *Therapeutics*, 2020 WL 7773580, at *12 (N.D. Cal. Dec. 30, 2020).  A plaintiff typically

16   satisfies this burden by alleging "that *the defendant* revealed the truth through 'corrective

17   disclosures' which 'caused the company's stock price to drop and investors to lose money.'"  *Id*.

18   (quoting *Lloyd*, 811 F.3d at 1209) (emphasis added).  This is yet another basis for dismissal.

19   Here, however, Plaintiff's entire loss causation theory is that the June 17, 2020

20   Prescience Report was a corrective disclosure.  AC ¶ 271.  But courts in this district and across

21   the country have consistently rejected the conclusion that short-seller reports constitute

22   "corrective disclosures" supporting an allegation of loss causation because the market does not

23   "reasonably perceive[]" the reports "as revealing the falsity of" the challenged statements.

24   *Nektar*, 2020 WL 7773580 at *14 (rejecting loss causation allegations based on report "published

25   by an anonymous short seller who had a financial interest in driving [the company's] stock price

26   down and who disclaimed any representation, express or implied, as to the accuracy, timeliness,

27   or completeness of any such information or with regard to the results obtained from its use")

28   (internal quotation marks omitted); *see also Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1208

1   (9th Cir. 2020) (affirming dismissal of complaint for failure to plead loss causation based on

2   report by "anonymous short-seller" whose analysis "did not require any expertise or specialized

3   skills beyond what a typical market participant would possess" and "included the disclaimer that

4   the author makes no representation as to the accuracy or completeness of the information");

5   *Miller v. PCM, Inc.*, 2018 WL 5099722, at *11-12 (C.D. Cal. Jan. 3, 2018) (same); *Bonanno v.*

6   *Cellular Biomedicine Grp., Inc.*, 2016 WL 2937483, at *5 (N.D. Cal. May 20, 2016) (rejecting

7   loss causation based on short seller report that "contain[ed] merely the opinions of the author and

8   cannot be categorically labeled as 'the truth'"); *In re Herbalife, Ltd. Sec. Litig.*, 2015 WL

9   1245191, at *5 n.9 (C.D. Cal. Mar. 16, 2015) (rejecting loss causation based on short-seller

10  report because the disclosure of negative opinions or an investigation "simply puts investors on

11  notice of a *potential* future disclosure of fraudulent conduct.  Consequently, any decline in a

12  corporation's share price following the announcement of an investigation can only be attributed

13  to market speculation about whether fraud has occurred."); *Meyer v. Greene*, 710 F.3d 1189,

14  1199 (11th Cir. 2013) (rejecting loss causation arguments because a short-seller's "opinion,

15  standing alone, cannot reveal[] to the market the falsity of a company's prior factual

16  representations") (quotation marks omitted).

17        Like the short-seller reports in each of these cases, the Prescience Report did not "reveal"

18  any "truth" to the market.  The primary allegation of the Prescience Report—purported inflation

19  of revenues and gross margins based on improper deferred revenue accounting—was *already*

20  *made public by Prescience* two years before the Prescience Report.  Ex. 1 at 18 ("In our initial

21  reports on ENPH published in 2018, we provided proof, in our view, that the Company had used

22  improper deferred revenue accounting to significantly inflate its reported revenue and gross

23  margin.").  Re-publishing the anonymous Prescience Report author's opinions does not reveal

24  anything, let alone "correct" any purported fraud.  *See Miller*, 2018 WL 5099722, at *11

25  (rejecting short-seller report based on author's "own opinions"); *Or. Pub. Emps. Ret. Fund v.*

26  *Apollo Grp., Inc.*, 774 F.3d 598, 608 (9th Cir. 2014) (rejecting short-seller report as basis for loss

27  causation where it expressed only author's concerns which do not "constitute a corrective

28  disclosure and a public admission of [the company's] alleged fraud"); *Bonanno*, 2016 WL

2937483, at *5 (dismissing claim because loss causation allegations based on short-seller report did not reveal any truth where report "contain[ed] merely the opinions of the author" which "cannot be categorically labeled as 'the truth'"); *see also Meyer*, 710 F.3d at 1199 ("If every analyst or short-seller's opinion . . . could form the basis for a corrective disclosure, then every investor who suffers a loss in the financial markets could sue under § 10(b) using an analyst's negative analysis of public filings as a corrective disclosure.  That cannot be—nor is it—the law.").

Simply put, Plaintiff fails to plead loss causation.  The Prescience Report fits squarely into the circumstances that courts routinely refuse to consider as sufficient to establish loss causation.  Plaintiff cannot rely on multiple layers of self-serving and unsubstantiated hearsay published by someone who admits to have bet against Enphase's stock to plead a corrective disclosure where all that was disclosed is Prescience's opinion.  The market clearly understood this insufficiency as demonstrated in the almost immediate rebound to a price well above Enphase's stock price before the Prescience Report.  *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021) (affirming dismissal of securities case on loss causation grounds where "[t]he quick and sustained price recovery after the modest [one-day] drop refutes the inference that the alleged concealment of this particular fact caused any material drop in the stock price").

### D.     Plaintiff's Section 20(a) Claim Fails

To state a claim for control person liability, Plaintiff must show a primary violation of Section 10(b) and that the control person defendants each "directly or indirectly" controlled the primary violator.  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).  Because Plaintiff fails to plead a primary Section 10(b) violation, his Section 20(a) claim also fails.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002).

## V.     CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion with prejudice.

1

2

DATED: February 19, 2021

**LATHAM & WATKINS LLP**

3

*/s/  Matthew Rawlinson*

4

Matthew Rawlinson (SBN 231890)
Daniel R. Gherardi (SBN 317771)
140 Scott Drive

5

Menlo Park, California 94025

6

Telephone:  (650) 328-4600
Facsimile:   (650) 463-2600

7

Email:  matt.rawlinson@lw.com
          daniel.gherardi@lw.com

8

9

**LATHAM & WATKINS LLP**
Michele D. Johnson (SBN 198298)

10

650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925

11

Telephone: (714) 540-1235
Facsimile: (714) 755-8290

12

Email: michele.johnson@lw.com

13

**LATHAM & WATKINS LLP**

14

Colleen C. Smith (SBN 231216)
12670 High Bluff Drive

15

San Diego, CA 92130-3086
Telephone: (858) 523-5400

16

Facsimile: (858) 523-5450
Email: colleen.smith@lw.com

17

18

**LATHAM & WATKINS LLP**
Gavin M. Masuda (SBN 260480)

19

505 Montgomery Street, Suite 2000
San Francisco, California 94111

20

Telephone:  +1.415.391.0600
Facsimile:   +1.415.395.8095

21

Email:  gavin.masuda@lw.com

22

*Attorneys for Defendants Enphase Energy,*

23

*Inc., Badrinarayanan Kothandaraman, and*
*Eric Branderiz*

24

25

26

27

28