LATHAM & WATKINS LLP
  Matthew Rawlinson (SBN 231890)
  Daniel R. Gherardi (SBN 317771)
140 Scott Drive
Menlo Park, California  94025
Telephone:  +1.650.328.4600
Facsimile:  +1.650.463.2600
*matt.rawlinson@lw.com*
*daniel.gherardi@lw.com*

  Michele D. Johnson (SBN 198298)
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone:  +1.714.540.1235
Facsimile:   +1.714.755.8290
*michele.johnson@lw.com*

  Colleen C. Smith (SBN 231216)
12670 High Bluff Drive
San Diego, California 92130
Telephone:  +1.858.523.5400
Facsimile:   +1.858.523.5450
*colleen.smith@lw.com*

  Gavin M. Masuda (SBN 260480)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone:  +1.415.391.0600
Facsimile:   +1.415.395.8095
*gavin.masuda@lw.com*

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| GREGORY A. HURST, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>ENPHASE ENERGY, INC., BADRINARAYANAN KOTHANDARAMAN, and ERIC BRANDERIZ,<br><br>  Defendants. | CASE NO.  5:20-cv-04036-BLF<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS LEAD PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Hearing:      July 29, 2021<br>Time:          9:00 a.m.<br>Location:     Courtroom 3 – 5th Floor<br><br>Hon. Beth Labson Freeman |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT ............................................................................................................. 2

    A.   Plaintiff's Opposition Does Not Refute His Failure to Plead Falsity ................... 2

        1.   Plaintiff Alleges *No Facts* Establishing That Enphase's Reported Revenues Were Incorrect or Premature or Overstated ................................................................................................ 2

        2.   Plaintiff's Allegations Do Not Establish an Undisclosed Material Related-Party Transaction ............................................................. 5

        3.   Prescience's Anonymous Sources Are Not Reliable, Should Not Be Credited, and Do Not Establish Accounting Fraud ..................... 6

    B.   Plaintiff's Scienter Allegations Do Not Support a Strong Inference of Deliberate Recklessness or Intentional Fraud ....................................... 9

    C.   The Prescience Report Is Not a Corrective Disclosure ....................................... 13

III.  CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aldridge v. A.T. Cross Corp.*,
284 F.3d 72 (1st Cir. 2002)......................................................................................................11

*In re AmTrust Financial Services, Inc. Sec. Litig.*,
2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)...........................................................................5

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ...................................................................................................14

*Brown v. China Integrated Energy, Inc.*,
875 F. Supp. 2d 1096 (C.D. Cal. 2012) ....................................................................................7

*In re China Educ. Alliance, Inc. Sec. Litig.*,
2011 WL 4978483 (C.D. Cal. Oct. 11, 2011)......................................................................7, 13

*In re Cirrus Logic Sec. Litig.*,
946 F. Supp. 1446 (N.D. Cal. 1996) .........................................................................................4

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) .............................................................................................4, 12

*Deason v. Super Micro Computer, Inc.*,
2017 WL 4355128 (N.D. Cal. Sept. 29, 2017) .........................................................................3

*Grigsby v. BofI Holding, Inc.*,
979 F.3d 1198 (9th Cir. 2020) .................................................................................................14

*Harris v. AmTrust Financial Services Inc.*,
135 F. Supp. 3d 155 (S.D.N.Y. 2015)......................................................................................4

*In re Herbalife, Ltd. Sec. Litig.*,
2015 WL 1245191 (C.D. Cal. Mar. 16, 2015)....................................................................14, 15

*In re LDK Solar Sec. Litig.*,
584 F. Supp. 2d 1230 (N.D. Cal. 2008) ...............................................................................3, 11

*Lea v. TAL Educ. Grp.*,
837 F. App'x 20 (2d Cir. 2020) .................................................................................................9

*In re Levi Strauss & Co. Sec. Litig.*,
527 F. Supp. 2d 965 (N.D. Cal. 2007) ......................................................................................3

*Lewy v. SkyPeople Fruit Juice, Inc.*,
2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012)..........................................................................8

*Lloyd v. CVB Fin. Corp.*,
　811 F.3d 1200 (9th Cir. 2016) ...............................................................................................15

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
　939 F. Supp. 2d 360 (S.D.N.Y. 2013)....................................................................................12

*In re Longwei Petroleum Investment Holding Ltd. Sec. Litig.*,
　2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) .......................................................................8, 10

*Manger v. LeapFrog Ents., Inc.*,
　252 F. Supp. 3d 837 (N.D. Cal. 2017)....................................................................................10

*McIntire v. China Media Express Holdings, Inc.*,
　927 F. Supp. 2d 105 (S.D.N.Y. 2013)..................................................................................7, 14

*Meyer v. Greene*,
　710 F.3d 1189 (11th Cir. 2013) .......................................................................................14, 15

*Miao v. Fanhua, Inc.*,
　442 F. Supp. 3d 774 (S.D.N.Y. 2020)......................................................................................7

*In re MicroStrategy, Inc. Sec. Litig.*,
　115 F. Supp. 2d 620 (E.D. Va. 2000) .....................................................................................10

*Miller v. PCM, Inc.*,
　2018 WL 5099722 (C.D. Cal. Jan. 3, 2018) .............................................................................7

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
　78 F. Supp. 3d 1215 (N.D. Cal. 2015) ......................................................................................6

*In re NektarTherapeutics*,
　2020 WL 3962004 (N.D. Cal. July 13, 2020).........................................................................7

*Nozak v. N. Dynasty Minerals, Ltd.*,
　804 F. App'x. 732 (9th Cir. 2020) ..........................................................................................10

*In re NVIDIA Corp. Sec. Litig.*,
　768 F.3d 1046 (9th Cir. 2014) ................................................................................................10

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
　575 U.S. 175 (2015).................................................................................................................5

*Pearlstein v. BlackBerry, Ltd.*,
　93 F. Supp. 3d 233 (S.D.N.Y. 2015).........................................................................................5

*Pensions and Death Bens. v. CSK Auto Corp.*,
　525 F. Supp. 2d 1116 (D. Ariz. 2007) ................................................................................9, 12

*Plumley v. Sempra Energy*,
　2021 WL 754841 (9th Cir. Feb. 26, 2021) .............................................................................11

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

REPLY ISO MOTION TO DISMISS
CASE NO. 5:20-CV-04036-BLF

*Provenz v. Miller*,
　95 F.3d 1376 (9th Cir. 1996) ...............................................................................................4

*SEB Investment Mgmt. AB v. Symantec Corp., et al.*,
　2019 WL 2491935 (N.D. Cal. June 14, 2019) ......................................................................8

*In re Silver Wheaton Corp. Sec. Litig.*,
　2019 WL 1512269 (C.D. Cal. Mar. 25, 2019) ...................................................................3, 9

*Turner v. MagicJack VocalTec, Ltd.*,
　2014 WL 406917 (S.D.N.Y. Feb. 3, 2014) ...........................................................................5

*In re Veeco Instruments, Inc. Sec. Litig.*,
　235 F.R.D. 220 (S.D.N.Y. 2006) .......................................................................................10

*Zucco Partners, LLC v. Digimarc Corp.*,
　552 F.3d at 995 (9th Cir. 2009) ...........................................................................................6

## I.      INTRODUCTION

This is not a securities fraud case.  There are no false statements later revealed to be untrue.  There has been no correction of any financial statements or the associated accounting.  There is no government investigation or inquiry.  There is no sustained stock price decline.  To the contrary, by any objective measure Enphase is a success story, experiencing strong and sustained growth after the execution of a turnaround plan by an experienced leadership team.

Plaintiff disregards all of these facts.  Instead, he seeks to manufacture a claim by piggy-backing on speculation in an unsourced report issued by an admittedly self-interested short seller, Prescience.  While Prescience itself warned that investors should assume its opinions may be incorrect, Plaintiff persists in arguing that the conjecture in the Prescience Report is enough to clear the PSLRA's heightened pleading bar.  It is not, on several independent grounds.

**Falsity.**  Plaintiff has not identified a single false or misleading statement in Enphase's financial statements.  He asserts that Enphase  "prematurely" recognized deferred revenue, but he does not explain how any revenue was prematurely recognized, what accounting treatment should have been applied, or why Enphase's fully disclosed approach to revenue recognition in compliance with required accounting standard ASC 606 was wrong.  A slew of cases establish that speculation about improper accounting unaccompanied by any restatement does not meet the pleading test.  Plaintiff also does not allege a single fact establishing that any defendant believed Enphase's financial statements were fraudulent, much less that they lacked a reasonable basis.  The uncorroborated statements of former employees that there were rumors of "unrealistic" growth are neither sufficient nor reliable.

**Scienter.**  The complaint also fails to clear the high bar for pleading scienter.  It does not point to any specific facts establishing that any defendant knew that Enphase's accounting practices were improper, or that its financial statements were false.  So Plaintiff hangs his hat on the assertion that there must be deliberate intent here because the "magnitude" of the accounting misstatements was so great.  This can't establish scienter because the magnitude of the accounting errors here is *zero*.  And while Plaintiff resorts to the familiar argument that his scienter allegations are sufficient taken holistically, that also fails.  It is not plausible that

Enphase insiders sold stock after they were tipped off that a short-seller report was coming, and no alleged facts support that conclusion. Likewise, Plaintiff's alleged red flags do not make sense. After Enphase's independent auditors were made aware of Prescience's accusations of improper revenue accounting in 2018, they *signed off* on the financial statements for 2018 and every reporting period thereafter. These facts support good faith, not fraud.

**Loss Causation.** Plaintiff urges the Court to adopt the view that any time a company's stock price dips following a non-anonymous report issued by a short seller, loss causation is sufficiently pled. This is not the law. Numerous courts have held—correctly—that a short seller's opinion (whether anonymous or not) is not a *fact* that corrects anything and cannot support loss causation. And here, loss causation is doubly absent because the Prescience Report revealed nothing new, but instead parroted accusations of improper revenue accounting practices made in a report Prescience issued two years before.

Plaintiff's claim, fundamentally, is that Enphase is too successful. But that is not and cannot be enough to support a claim for securities fraud. This case should be dismissed.

## II. ARGUMENT

### A. Plaintiff's Opposition Does Not Refute His Failure to Plead Falsity

#### 1. Plaintiff Alleges *No Facts* Establishing That Enphase's Reported Revenues Were Incorrect or Premature or Overstated

Plaintiff's Opposition does not (because it can't) solve the fundamental problem with his complaint—it contains no facts (even if assumed to be true) that would establish that anything about Enphase's accounting was wrong. Plaintiff does not point to any restatement of Enphase's accounting, much less any missed earnings revealing the impact of accounting fraud. He does not point to any specific revenue standard that Enphase failed to apply correctly. And he does not point to any facts establishing that Enphase did not actually experience the revenue it reported. Instead, Plaintiff offers (incorrect) platitudes about how revenue recognition supposedly works, and asserts that Enphase prematurely recognized revenue without saying how it did so. These threadbare allegations do not come close to pleading falsity.

Plaintiff attempts to fix this glaring problem by stating, as if it were so, that Enphase "prematurely" recognized deferred revenue.  Opp. at 7-11.  But Plaintiff has not alleged a single fact supporting this assertion, much less with the specificity required to plead securities fraud. Courts routinely hold that more is required, especially when, as here, there are no objective indications of any erroneous accounting much less fraud.  *See, e.g., In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 984-85 (N.D. Cal. 2007) (falsity not pled with the required specificity for accounting that was not restated when plaintiffs relied on allegations of "improper accounting" practices by former employees); *see also Deason v. Super Micro Computer, Inc.*, 2017 WL 4355128, at *2 (N.D. Cal. Sept. 29, 2017) (falsity not pled with specificity where accounting was not restated and plaintiff "has not explained in sufficient detail how the past reports were inaccurate"); Mot. at 8-9 (citing cases).  While Plaintiff seeks to distinguish Defendants' cited cases by saying that the lack of a restatement does not absolve securities fraud liability (Opp. at 10), he disregards the fact that in each of his cases without a restatement, there were (as required) very particular factual allegations that would (if true) establish fraudulent accounting.  *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1237 (N.D. Cal. 2008) (falsity sufficiently pled where the company's auditor warned that accounting and internal controls were inadequate and the employee specifically tasked with handling such issues publicized objectively identifiable fraud after being fired from the company); *In re Silver Wheaton Corp. Sec. Litig.*, 2019 WL 1512269, at *9-11 (C.D. Cal. Mar. 25, 2019) (detailed confidential witness allegations establishing that wire transfers were hidden from the company's independent auditors).

Plaintiff's pleading does not meet this mark.  He offers no specific factual support or any details regarding what accounting judgments Enphase made or how they were wrong.  Opp. at 8. At most, he alleges that Enphase applied a new required accounting standard, ASC 606, and criticizes the accounting treatment of an Enphase product under that rule.  But Plaintiff does not plead a single fact indicating that Enphase did not follow ASC 606, nor does he explain how Enphase's application of that accounting standard (fully disclosed in Enphase's audited financial statements, *see, e.g.*, Ex. A at 38, 49-50, 66-67; Ex. B at 37, 41, 42, 49, 60-62, 67-69, 71-72) was wrong.  And it is no answer to say, as Plaintiff does, that revenue recognition is easy, and boils

down to not counting chickens before they hatch.  Opp. at 8.  ASC 606 itself contemplates that companies will "estimate" the delivery period for goods and services provided over time—and the delivery period, not the date that payments are received, controls.  FASB ASC 606.  Indeed, the very case Plaintiff relies on—*In re Cirrus Logic Securities Litigation*, 946 F. Supp. 1446, 1460 (N.D. Cal. 1996)—acknowledges that revenue recognition is not as simple as counting dollars when they come in the door.  In *Cirrus*, the company properly recognized revenue upon shipment—even if the product had not been delivered and even if the payments had not been made.  *Id.* at 1464-65 (citing *Provenz v. Miller*, 95 F.3d 1376, 1383 (9th Cir. 1996)).

Plaintiff's allegations regarding tariff impacts are equally insufficient.  Plaintiff asserts that tariffs would have "caused a 10-25% increase in [Enphase's] unit costs" (Opp. at 9), without any factual support for *why* or *how* the tariffs would have increased unit costs exactly to the tariff and while disregarding Enphase's express disclosure of the tariffs and their impact (Ex. A at 13, 78).  The same is true for Plaintiff's assertion that safe harbor revenue was "irreconcilable" with gross margins, and that Enphase's accounts receivable created an "imbalance" (Opp. at 10-11), coupled with no allegations as to how or why these metrics were wrong.

Plaintiff's conclusory pleading is analogous to *Harris v. AmTrust Financial Services Inc.*, 135 F. Supp. 3d 155, 172 (S.D.N.Y. 2015), which Plaintiff does not even try to distinguish.  There, the plaintiff asserted certain expenses were misclassified, but provided no facts establishing how the expenses were classified or how the relevant accounting violated GAAP.  *Id.*  These allegations amounted to "no more than a 'naked assertion' devoid of 'further factual enhancement,'" that did "not permit the Court to infer that the Defendants committed accounting fraud."  *Id*.  The same is true here.  To clear the PSLRA bar, Plaintiff must plead *specific facts* regarding what GAAP requires and how Enphase's financial statements do not adhere to those requirements.  *See* Opp. at 8 (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1017 (9th Cir. 2005), which requires plaintiff to allege "enough information" for a court to discern what the alleged GAAP violations are and whether they were significant).  Plaintiff has not done so here.

These pleading shortcomings are more than enough to support dismissal.  But in addition to Plaintiff's failure to plead specific facts establishing that any of Enphase's accounting was

actually and objectively false, he also makes no effort to establish that Enphase's executives *subjectively believed* the financial statements were false or that they had no basis whatsoever to believe they were true. Mot. at 9-10 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015)). Indeed, Plaintiff does not even try to argue that Defendants did not make reasonable accounting judgments—nor could he plausibly do so given that Enphase's auditors signed off on Enphase's financial statements which to this day have not been restated or corrected. *See Turner v. MagicJack VocalTec, Ltd*., 2014 WL 406917, at *9 (S.D.N.Y. Feb. 3, 2014). And that auditor sign off is even more powerful in light of the fact that Prescience made the same accusations of premature revenue recognition in 2018, obligating Enphase's auditors to take a hard look at those issues. *See infra* at II.B. Instead, Plaintiff asserts that *Omnicare* does not apply because revenue recognition is not an accounting judgment. Opp. at 7. This is wrong. It is well-established that accounting judgments—including revenue recognition—are matters of opinion, and must be evaluated as such. Mot. at 9 (citing cases including *Pearlstein v. BlackBerry, Ltd.*, 93 F. Supp. 3d 233, 243 (S.D.N.Y. 2015) noting that revenue recognition "choices . . . involve subjective judgments"). Plaintiff's cited case, *In re AmTrust Financial Services, Inc. Securities Litigation*, 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019), is in accord. There, the court held that the company's *narrative* description of its revenue recognition practices was a statement of fact, but the application of revenue recognition standards in financial statements was a matter of opinion. *Id.* at *14-18. Likewise, here, Enphase's financial statements reflect accounting judgments, and no alleged facts establish that Defendants did not believe them or that they lacked a reasonable basis.

### 2.   Plaintiff's Allegations Do Not Establish an Undisclosed Material Related-Party Transaction

Plaintiff's assertion that Enphase had a duty to disclose an asset purchase with ActivStor because it was a "related-party transaction" involving an Enphase vice president (Opp. at 11) should also be rejected. Plaintiff attempts to shift the burden of pleading materiality to Defendants while offering no facts at all reflecting the transaction's value, its impact on Enphase's stock price, or anything else that would support even a colorable claim of a material

omission. This alone is sufficient to reject this claim. Mot at 11. Nor does Plaintiff allege any facts indicating that Mr. Majjiga—who left ActivStor to join Enphase *after* the transaction (Ex. 1 at 42-43)—had any control over Enphase at the time of the deal. The one case Plaintiff cites offers him no support. In *Montage*, the plaintiff offered particular details based on its own investigation showing that the two corporate entities were owned and controlled by the same affiliate entity with shared phone numbers and offices. *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1219-20 (N.D. Cal. 2015) (cited Opp. at 11). Those facts are a far cry from this case where there are no allegations that Mr. Majjiga had sufficient control over either Enphase or ActivStor to render the combination a related-party transaction.

### 3. Prescience's Anonymous Sources Are Not Reliable, Should Not Be Credited, and Do Not Establish Accounting Fraud

Plaintiff further argues that the complaint adequately pleads falsity when anonymous former Enphase employees' statements are taken into account. Opp. at 11-13. But those statements do not add any particularized detail about any sort of accounting fraud. Instead, Prescience reports vague accusations that "everything is micromanaged," revenue growth was rumored to be "unrealistic" or "fabricated," and Enphase had shifted to a newly implemented accounting standard, ASC 606, that "allows tinkering with deferred revenue." *See* Ex. 1 at 10, 19. This type of general speculation provides no *facts* establishing improper accounting practices. But even if the statements of these witnesses were meaningful, the complaint does not supply particularized allegations establishing their reliability and personal knowledge, as required (*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009)).

*First*, Plaintiff asserts that the Prescience Report is not "anonymous" because it was authored by a named entity (although unclear by whom, exactly), and because the complaint purportedly describes Prescience's investigatory methods. Opp. at 11-12. But the description of Prescience's "investigation" consists only of allegations that it hired an unidentified third-party investigator and spoke with unnamed and undescribed former employees, solar industry participants and an anonymous accountant. Ex. 1 at 4-5; Compl. ¶¶ 84-85. That stands in contrast to Plaintiff's cited case, *Brown v. China Integrated Energy, Inc.*, in which the short-

seller report disclosed the names of investigators hired (who were world-renowned and respected), the details of their investigation (which included observations of defendant's factory over three months, among other surveillance evidence of unused facilities), and the names of Chinese government officials that corroborated the investigation. 875 F. Supp. 2d 1096, 1111-12 (C.D. Cal. 2012); *see also Miller v. PCM, Inc.*, 2018 WL 5099722, at *9 n.5 (C.D. Cal. Jan. 3, 2018) (applying *Zucco* and declining to follow *McIntire v. China Media Express Holdings, Inc.*, 927 F. Supp. 2d 105, 123-24 (S.D.N.Y. 2013) or *In re China Educ. Alliance, Inc. Sec. Litig.*, 2011 WL 4978483 (C.D. Cal. Oct. 11, 2011) (cited Opp. at 11-12)).

The fact that Plaintiff and his counsel have not independently investigated Prescience's allegations on which the complaint relies is fatal, and Plaintiff does not even address this flaw. Mot. at 14-15. Where, as here, counsel has "done nothing whatsoever to confirm the identities or statements of the confidential sources cited," they cannot be credited. *Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 804 (S.D.N.Y. 2020). "Allowing counsel to rely on confidential witness statements recounted in a separate document whose authors had significant motive and opportunity . . . to misuse or mischaracterize confidential witness statements . . . would provide the Court little assurance that the factual contentions have any evidentiary support." *Id*. In this situation, "the risk of motivated reporting by the author of the short-seller report is twinned with the reliability concerns presented by anonymous sourcing." *Id.* at 801; *see also In re Nektar Therapeutics*, 2020 WL 3962004, at *10 (N.D. Cal. July 13, 2020) (falsity not pled based on report where short seller "stood to benefit" from a stock price decline and plaintiffs lacked any information supporting reliability of short seller's opinions). The absence of any independent investigation is particularly glaring given that Prescience disclaimed the accuracy of its own report, which was presented "without warranty of any kind," and made "no other representations, express or implied, as to the accuracy . . ." of its report. Ex. 1 at 55.

*Second*, Plaintiff argues that the Prescience Report is reliable because the unidentified sources are "adequately corroborated." Opp. at 12. But the only corroborating facts are additional layers of anonymous hearsay, based on sources that do not meet the Ninth Circuit's *Zucco* test. Plaintiff asserts that Prescience interviewed Enphase's distributors, but those

supposed interviews were with *unidentified* employees of six solar companies at some *unidentified* point in time. Ex. 1 at 29. And the market share that Prescience claims those distributors comprised is itself an estimate based on unspecified information provided by "solar industry participants." *Id.* These statements do not provide the specificity required to be deemed sufficiently reliable to plead securities fraud. *See* Mot. at 13 (citing cases). Nor does Plaintiff point to specific information about these former employees and distributors to establish that they were in a position to know *anything* about Enphase's financial results or its revenue accounting, as required. *See* Mot. at 14 (citing cases holding that unidentified witnesses must have direct *personal knowledge* of the company's relevant processes and decisions to be reliable).

In contrast, in Plaintiff's cited cases the confidential witnesses provided specific facts that were corroborated by other sources. Opp. at 13-14. In *In re Longwei Petroleum Investment Holding Ltd. Securities Litigation*, the anonymous sources interviewed by a short seller were specifically described as residents living near defendant's fuel storage facility who knew whether shipments "were coming and going from the facilities" because they lived close enough to see the lack of activity. 2014 WL 285103, at *3 (S.D.N.Y. Jan. 27, 2014). And, unlike here, their accounts were corroborated by surveillance video. *Id.* And similarly in *Lewy*, the court credited confidential sources in analyst reports when their statements were corroborated by figures reported in defendant's filings with Chinese regulators and findings from independent investigators based on visits to stores and production facilities with accompanying photographs showing limited operations. *Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916, at *13-14 (S.D.N.Y. Sept. 10, 2012). The Prescience Report contains no such independent corroboration.

*Finally*, while Plaintiff argues he need not allege specific examples of accounting fraud at this stage (Opp. at 15), his own authority confirms that the complaint must allege *some* GAAP violation that constitutes "significant inflation of revenue." *Id.* (quoting *SEB Inv. Mgmt. v. Symantec Corp.*, 2019 WL 2491935, at *5 (N.D. Cal. June 14, 2019). He has not done that. Not one allegation by Plaintiff, Prescience, or its anonymous sources would establish (even assuming it was true) that Enphase's reported revenues do not comply with GAAP, and so were inflated.[1]

---

[1] Plaintiff apparently has abandoned his claim that the SOX certifications were misleading.

### B.    Plaintiff's Scienter Allegations Do Not Support a Strong Inference of Deliberate Recklessness or Intentional Fraud

As for scienter, Plaintiff argues that the "sheer magnitude" of the issues presented by his scienter allegations is enough to clear the pleading bar. Opp. at 15-16. This is wrong. Whether considered individually or collectively, Plaintiff's allegations do not give rise to a strong inference of fraudulent accounting, against the far more cogent and compelling inference that Enphase's reported financials were (and remain) correct.

**Alleged GAAP Violations.** Plaintiff first argues that scienter is established based on the supposed magnitude of Enphase's GAAP violations. Opp. at 16-17. But Plaintiff has not actually stated facts establishing *even a single GAAP violation*, so the "magnitude" of this supposed fraud is zero. There has been no accounting correction or irregularity, no restatement, no earnings miss, and no regulatory action. The most reasonable—indeed, the only—conclusion from these facts is proper accounting not fraud.

Plaintiff's own cited cases reveal the stark differences between the allegations in this case and those in which scienter was sufficiently pled. *CSK Auto* (cited Opp. at 16) involved the restatement of four years of financial results, after an audit committee investigation that resulted in the departure of the CEO and CFO and an admission by the company that "senior management" had engaged in "accounting irregularities," "suppressed accounting related inquiries," "discouraged employees from raising accounting related concerns," and failed to comply with the company's code of ethics. *Commc'ns Workers of Am. Plan for Emps.' Pensions and Death Benefits v. CSK Auto Corp.*, 525 F. Supp. 2d 1116, 1118, 1121-22 (D. Ariz. 2007). The other cases Plaintiff points to also involved particularized facts supporting scienter, not just the size of the purported fraud. *See Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 27 (2d Cir. 2020) (finding scienter on the basis of sham transactions that accounted for substantially all of defendant's revenue); *Silver Wheaton*, 2019 WL 1512269, at *9 (finding scienter based on allegations of tax evasion, including allegations by a confidential witness that defendants coached in preparation for interview with tax authorities); *Longwei*, 2014 WL 285103, at *1 (finding scienter based on alleged sudden increase in revenue *coupled with* extensive allegations

that senior executives were aware that the company's oil storage and transportation facilities were actually in disrepair and not being used, allegations corroborated by video footage).

Plaintiff's other cited cases (Opp. at 17), all involved *actual restatements* reflecting a significant GAAP violation. For example, in *MicroStrategy*, the company issued a restatement that required revisions to annual reports for three fiscal years and seven of eight quarters, the effect of which was to reveal that the company operated at a loss, rather than a profit as previously reported. *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 637 (E.D. Va. 2000) (cited Opp. at 17) (finding inference of scienter where the GAAP violations and the subsequent restatements amounted to "a night-and-day difference with regard to MicroStrategy's representations of profitability"); *see also In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 231 (S.D.N.Y. 2006) (finding scienter alleged based on a large accounting restatement and fraudulent instructions by senior executives, including directions to "bury" an accounting adjustment). There is no restatement here, so if anything, these cases support dismissal.

Plaintiff also half-heartedly asserts that GAAP violations purportedly establish Enphase's corporate scienter, even if the allegations are insufficient as to the individual defendants. Opp. at 17. Putting aside that the Ninth Circuit "has not adopted the corporate scienter doctrine," *Nozak v. N. Dynasty Minerals, Ltd.*, 804 F. App'x. 732, 734 (9th Cir. 2020), even if this were a viable theory of liability, Plaintiff would have to allege facts establishing that the statement is "so obviously false" that it "would be absurd to suggest" that the company and its "top management were not aware of its falsity." *Manger v. LeapFrog Enters., Inc.*, 252 F. Supp. 3d 837, 847 (N.D. Cal. 2017); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) (requiring misrepresentations that were "dramatically false"). Courts illustrate the requisite dramatic falsity as imagining if General Motors announced the sale of one million SUVs when the number was in fact zero. *See NVIDIA*, 768 F.3d at 1063 n.13. Enphase's accounting statements are not false at all much less so dramatically false as to support corporate scienter.

**Stock Sales and Compensation.** Plaintiff doubles down on his position that certain stock sales by Enphase insiders before the Prescience Report establish scienter. Opp. at 17-20. But Plaintiff has no response to the fact that stock sales by insiders who are not defendants are

*completely irrelevant* to scienter.  Mot. at 18.  And while Plaintiff speculates that these (irrelevant) insider sales reflect knowledge that the Prescience Report would be published, that theory is both entirely unsupported by any factual allegations and makes no sense.  Why would a short seller with a vested interest in engineering a stock price drop for its own financial benefit preview the report or its timing to insiders with large holdings?  It didn't, of course, and the Court should reject this theory out of hand.  Plaintiff also does not explain why these insiders would sell off their shares—supposedly because they knew Enphase's accounting was a house of cards—when the contrary was true and they would have *profited* by holding.  What Plaintiff ignores is that these insider stock sales coincide with the expiration of a ninety-day "lockup" period after a March 2020 notes offering after which they were permitted to sell.  Ex. D at 40.  The most reasonable explanation for the timing of these stock sales is this one, not advance knowledge of a short-seller attack.

Plaintiff's suggestion that Mr. Kothandaraman was motivated to commit securities fraud because his compensation included stock options (Opp. at 19-20) also adds nothing to the scienter calculus.  Courts have long held that it is not enough to point to stock-based compensation based on the fact that the vast majority company executives receive compensation in the form of equity.  Mot. at 16 (citing cases); *see also Plumley v. Sempra Energy*, 2021 WL 754841, at *2 (9th Cir. Feb. 26, 2021) ("claims of financial motivation speak to precisely the routine corporate objectives" courts have rejected as insufficient to plead scienter).  Plaintiff's cases are not applicable here because they involve admissions by defendants that their position at the company depended on their ability to turn the company around in a short time.  *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002); *see also LDK*, 584 F. Supp. 2d at 1247-50 (finding scienter where auditors raised concerns and inventory accounting was "critical to LDK's success").  Indeed, the court in *Aldridge* noted that when executive "compensation depended on the company's earnings" that "is not and cannot be enough to establish scienter."  284 F.3d at 83.

**Former Employee Statements.**  Plaintiff's references to statements by unidentified former employees in the Prescience Report attributing a purported deferred revenue scheme to the Individual Defendants (Opp. at 20-21) is similarly unavailing.  Even if these sources were not

utterly unreliable (which they are, as discussed above), these general statements to the mere effect that Enphase was recognizing revenue in a certain way, without more, do not come close to demonstrating improper accounting much less that any defendant personally directed any alleged fraud.  Mot. at 16.  The facts alleged here are nothing like those in Plaintiff's cited cases. In *Daou*, multiple confidential witnesses including a defendant's executive assistant and a sales vice president alleged specific instances of direct involvement by the defendants including that they "made the decision on how much revenue to recognize" and "directed the practice," including "manually adjusting" key financial figures.  411 F.3d at 1023 (cited Opp. at 20).  And in *CSK Auto*, the court actually held that plaintiff's confidential witnesses did not allege direct knowledge by individual defendants or provided little or no supporting detail and relied on other facts to find an inference of scienter including that the company *admitted* accounting "irregularities" that were "attributable to senior management."  525 F. Supp. 2d at 1123-24.

**"Red Flags."**  In a last-ditch attempt to plead scienter, Plaintiff lumps together a series of unrelated assertions calling them "red flags" that supposedly should have put Defendants on notice of fraud.  Opp. at 21-22.  First, despite claiming that Prescience's 2018 report was not sufficient to put the market on notice of potential fraud for loss causation purposes, Plaintiff now contends it was a red flag signaling "improper deferred revenue accounting" that Defendants ignored.  Far from supporting an inference of scienter this fact actually offers compelling support for the *opposite conclusion*.  Having been made aware of the accusations of improper revenue accounting in 2018, Enphase's independent auditors then reviewed and signed off on Enphase's financial statements and accounting practices for 2018 and every annual report thereafter.  Exs. A, B, D.  Those audits did not yield any restatements of Enphase's financials.  The far more reasonable inference from these facts is that Enphase and its auditors—who have a duty to investigate claims related to their prior audit opinions—evaluated and rejected Prescience's accusations.  *See In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 384 n. 182 (S.D.N.Y. 2013) (noting that Public Company Accounting Oversight Board Auditing Standard 561 requires auditors to investigate facts learned that may have an effect on audit report).

Second, Plaintiff asserts that employee turnover in India and the departure of Enphase's CFO show that "further investigation was warranted." Opp. at 21. But Plaintiff pleads no facts indicating such turnover was unusual for the industry, location or time period, and offers no link between personnel changes and purported accounting fraud. His cited case involved the "rapid turnover" of multiple CFOs mixed with numerous particularized allegations of scienter including the company's keeping of two different sets of books. *China Educ.*, 2011 WL 4978483, at \*6.

Third, Plaintiff points to a two-week increase in the time needed to pay accounts receivable and says that this is a signal of fraud. Opp. at 21. But Plaintiff again does not allege a single fact indicating that this payment time period was unusual or different than Enphase's peers. Nor does he point to even a single case or any other authority supporting the conclusion that an increase in that time period signals fraud, or explain how such a minor change (if true) has anything to do with supposedly premature revenue recognition.

Fourth, Plaintiff claims Enphase hired a former executive of another solar company that was supposedly investigated by the government, but did not disclose this hire. Opp. at 21. But Plaintiff does not allege that this individual had anything to do with Enphase's accounting, nor that he had anything to do with the issues involved in the unrelated government investigation, or that he was a subject of investigation, or any other fact at all regarding why Enphase's failure to disclose that it hired an employee equates to knowledge of purportedly fraudulent revenues.

Finally, Plaintiff returns to his claim that an Enphase executive's responses to a reporter on the day the Prescience Report was published were "evasive." Opp. at 21-22. But Plaintiff's use of this description bears no resemblance to the actual question and answer. Mot. at 11 (citing Ex. A at 44) (explaining that gross margins improved due to higher sales at lower cost).

### C.    The Prescience Report Is Not a Corrective Disclosure

As for the element of loss causation, Plaintiff argues that his pleading burden is satisfied because the Prescience Report was not anonymous, included nonpublic (but anonymous) sources, and was followed by a "significant" drop in Enphase's stock price. Opp. at 23-25. None of these alleged facts establishes loss causation.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

*First*, it makes no difference whether the Prescience Report was anonymous. Plaintiff seeks to distinguish Defendants' cases finding a failure to plead loss causation, but none of those cases *turned on* whether a short-seller's attack was anonymous or not. *See Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1208 (9th Cir. 2020) (cited Opp. at 22) (short-seller report was not corrective where it reflected and characterized public information); *Miller*, 2018 WL 5099722, at *12 (cited Opp. at 23) (finding no loss causation where short seller post "could potentially establish that a 'risk' or 'potential' for fraud exists, which is insufficient," without relying on whether post was anonymous); *In re Herbalife, Ltd. Sec. Litig.*, 2015 WL 1245191, at *5 (C.D. Cal. Mar. 16, 2015) (cited Opp. at 23) (with respect to non-anonymous short-seller opinion, questioning whether a short seller's assessment could *ever* constitute a corrective disclosure); *Meyer v. Greene*, 710 F.3d 1189, 1199 n.10 (11th Cir. 2013) (rejecting loss causation based on non-anonymous short seller opinion, and questioning whether such opinions could ever be corrective disclosures; observing that "such opinions—like black swans—will be the exception, not the rule").  And while Plaintiff points to *BofI* as "informative," Opp. at 24 (citing *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781 (9th Cir. 2020)), that case *supports* dismissal here.  The Ninth Circuit held that short-seller reports questioning the accuracy of a company's public SEC filings were not corrective disclosures because, "[e]ven if the posts disclosed information that the market was not previously aware of," they came from authors "who had a financial incentive to convince others to sell" and included "disclaimers" as to their "accuracy or completeness."  *Id.* at 797.  In contrast, a whistleblower complaint made by a non-anonymous *former auditor* of the company with inside, personal knowledge and who alleged "highly detailed and specific" compliance issues was sufficient (but just barely, as one of the judges on this panel vigorously dissented on this point).  *Id.* at 788, 792; *see also id.* at 799-801 (Lee, J. dissenting).  Plaintiff's allegations here fit squarely under the short-seller rubric.  There are no "highly detailed" allegations from a named insider with personal knowledge of Enphase's accounting.  Rather, the Prescience Report reflects the opinion of someone with a "financial incentive to convince others to sell" and a disclaimer "as to [its] accuracy, timeliness, or completeness."  Ex. 1 at 55.

*Second*, the Prescience Report's citation of nonpublic sources (Opp. at 23) also makes no difference. Plaintiff does not allege that those sources (themselves anonymous and unreliable) provided any *new* information to the market. In fact, Plaintiff admits that the earlier 2018 Prescience report put Enphase—and necessarily, the market—on notice of the premature revenue recognition practices Plaintiff accuses Enphase of engaging in now. Opp. at 21 (alleging that the 2018 report was a red flag Defendants ignored); *see also* Ex. 1 at 4 (Prescience Report) ("In our initial reports on ENPH published in 2018 . . . we provided what we believed to be proof that ENPH had used improper deferred revenue accounting to significantly inflate its reported revenue and gross margins."). Prescience's reiteration two years later of the same accusation of improper accounting did not reveal anything new, and cannot support loss causation. Mot. at 20.

*Third*, Plaintiff has no response to the numerous cases Defendants cited in which courts have held that a short seller's opinion and speculation are not *facts* that correct anything and cannot support loss causation. Mot. at 19-21. The Prescience Report reflects an (unfounded) *opinion* about Enphase's financials, but it does not actual reveal any inaccuracy in Enphase's financial reports (nor could it have given that Enphase's financials have not been restated or otherwise corrected). As many courts have held, while a short seller's publication of negative opinions about a company may cause a stock price drop, this type of mere speculation does not meet the standard for loss causation because it does not reveal any "truth," let alone "correct" any purported fraud. *Id.* at 20-21 (citing cases); *see also Meyer*, 710 F.3d at 1199 ("If every analyst or short-seller's opinion . . . could form the basis for a corrective disclosure, then every investor who suffers a loss in the financial markets could sue under § 10(b) using an analyst's negative analysis of public filings as a corrective disclosure. That cannot be—nor is it—the law."). At most, a short seller's opinions might put investors "on notice of a *potential* future disclosure of fraudulent conduct." *Herbalife*, 2015 WL 1245191, at *4. But raising the auspices of fraud is insufficient to serve as a corrective disclosure without some "subsequent corrective disclosure by the defendant." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016).

## III. CONCLUSION

Defendants respectfully request that the Court grant Defendants' Motion with prejudice.

DATED: April 16, 2021

**LATHAM & WATKINS LLP**

*/s/ Matthew Rawlinson*
Matthew Rawlinson (SBN 231890)

*Attorneys for Defendants Enphase Energy, Inc., Badrinarayanan Kothandaraman, and Eric Branderiz*