# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| GREGORY A. HURST,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ENPHASE ENERGY, INC., et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-04036-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |

Now before the Court is Defendants' Motion to Dismiss this putative securities class action. ECF 53. For the reasons discussed at the July 29, 2021 motion hearing and further explained below, the Court GRANTS Defendants' Motion to Dismiss WITH LEAVE TO AMEND.

## I.　　BACKGROUND

On June 17, 2020, Plaintiff Gregory Hurst filed a securities class action suit in this Court alleging violations of various securities laws against Enphase Energy, Inc. ("Enphase"), Enphase CEO Badrinarayanan Kothandaraman, and Enphase CFO Eric Branderiz (collectively, "Defendants"). Complaint, ECF 1. On January 22, 2021, Hurst filed an amended complaint. First Amended Complaint ("FAC"), ECF 52. The FAC alleges that between February 26, 2019 and June 16, 2020, Defendants made materially false and misleading statements or failed to disclose material adverse facts to cover up the fact that "Enphase's improbable financial performance was fraudulent." *Id*. at ¶¶ 1, 8. According to Plaintiff, "Defendants misrepresented and/or failed to disclose to investors that: (1) its revenues, both U.S. and international, were inflated; (2) the Company engaged in improper deferred revenue accounting practices; [and] (3) the Company's

reported base points expansion in gross margins were overstated." *Id*. ¶ 164. The FAC identifies numerous false or materially misleading statements made by Defendants in or related to their SEC filings between FY2018 and FY2020 Q1. *Id*. at ¶¶ 66-76; *see also* ¶¶ 165-219. The identified statements generally contained allegations about Enphase's revenue, cash flow, and GAAP and non-GAAP gross margins. *Id*.

The FAC's allegations are largely derived from a short seller report published by Prescience Point Capital Management (the "Prescience Report") on June 17, 2020. FAC at ¶¶ 8-23; *see also* ¶¶ 77-163 (discussing Prescience Report). The Prescience Report announced, among other things, that

> financial statements filed with the SEC [by Enphase] are fiction. Based on our research, we estimate that at least $205.3m of [Enphase's] reported US revenue in FY 2019 was fabricated. Based on statements provided by former employees and other solar industry participants, it appears that the Company inflated its international revenue significantly as well. We also believe that most, if not all, of the enormous 2,080 Bps expansion in the Company's gross margin during [Defendant Badrinarayanan] Kothandaraman's tenure as CEO–from 18.4% in Q2 2017 to 39.2% in Q1 2020–is fiction. We believe government bodies should investigate ENPH, Deloitte should launch an in-depth investigation of the Company's accounting practices, and the Board of Directors should establish an independent committee to examine the findings and analyses presented in this report.

*Id*. ¶ 8. The Prescience Report purports to be based on an analysis of Enphase's reported financials along with a "private investigation" based on interviews with former employees of Enphase's Bangalore, India office. *Id*. ¶¶ 9, 18.

Following the publication of the Prescience Report, Plaintiff contends Enphase's stock price "plummeted from its June 16, 2020 closing price of $52.76 per share to a June 17, 2020 closing price of $39.04 per share, a one day drop of $13.72 or approximately 26%." FAC ¶ 26. The same day the Prescience Report was published, Plaintiff filed suit. This motion followed.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

2

claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In addition to the pleading standards discussed above, a plaintiff asserting a private securities fraud action must meet the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b); *see also In re VeriFone Holdings*, 704 F.3d at 701. Similarly, the PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading ...." 15 U.S.C. § 78u-4(b)(1)(B). The PSLRA further requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A). "To satisfy the requisite state of mind element, a complaint must allege that the defendant [ ] made false or misleading statements either intentionally or with deliberate recklessness." *In re VeriFone Holdings*, 704 F.3d at 701 (internal quotation marks and

3

citation omitted) (alteration in original). The scienter allegations must give rise not only to a plausible inference of scienter, but to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

### III. REQUEST FOR JUDICIAL NOTICE

Ordinarily, a district court's inquiry on a Rule 12(b)(6) motion to dismiss is limited to the pleadings. "A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Courts may take judicial notice of facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). Indisputable facts are those that are "generally known" or that "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *Id.*

Defendants request that this Court take judicial notice of Exhibit A, Enphase's annual report on Form 10-K for fiscal year 2019 publicly filed with the United States Securities and Exchange Commission ("SEC") on February 21, 2020; Exhibit B, Enphase's annual report on Form 10-K for fiscal year 2018 publicly filed with the SEC on March 15, 2019; Exhibit C, Enphase's definitive proxy statement on Schedule 14A publicly filed with the SEC on April 2, 2018; Exhibit D, Enphase's annual report on Form 10-K for fiscal year 2020 publicly filed with the SEC on February 16, 2021; Exhibit E, a report by Prescience Point Capital Management dated July 25, 2018; Exhibit F, a report by Prescience Point Capital Management dated August 15, 2018; Exhibit G, the historical price of Enphase common stock from September 6, 2017 to January 22, 2021; and Exhibit H, a Form 4 for Eric Branderiz dated June 5, 2020. Request for Judicial Notice, ECF 54; *see also* Gherardi Declaration, ECF 55. Plaintiff does not oppose the request. *See* Opp.

4

The Court finds that Exhibits A, B, E, and H are incorporated by reference into the FAC. *See, e.g.,* FAC ¶¶ 81 (July 2018 Prescience Point Capital Management), 159 (2019 Form 10-K), 161 (2018 Form 10-K), and 225 (Form 4 for Eric Branderiz). The incorporation by reference doctrine permits the Court to take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knieval v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks and citations omitted) (alteration in original). The Court finds that Exhibits C and D—Enphase's 2018 Schedule 14A and 2020 Form 10-K—are matters of public record, not subject to reasonable dispute, and available from sources whose accuracy cannot reasonably be questioned—the SEC's public website. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049, 1064 n.7 (SEC filings subject to judicial notice). The remaining Exhibits—F and G—are an August 2018 report by Prescience Point Capital Management and the historical price of Enphase common stock. Both documents are publicly available, and their accuracy is not disputed by Plaintiff. The Court thus takes judicial notice of the existence of these exhibits. Defendants' request for judicial notice is GRANTED.

**IV.   DISCUSSION**

**A.  Claim 1: Section 10(b) and Rule 10b-5**

Section 10(b) makes it unlawful "for any person ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]" 15 U.S.C.A. § 78j. Rule 10b-5, promulgated by the SEC under the authority of § 10(b), in turn makes it unlawful for any person,

> (a) To employ any device, scheme or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c)

5

> To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To state a securities fraud claim, a plaintiff must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017). Defendants' motion is predicated on requirements one, two, and six. *See* Mot. at 8-15 (material misrepresentation or omission), 15-19 (scienter), 19-21 (loss causation).

The Court rejects the Defendants' motion to the extent it is predicated on loss causation. The loss causation element of a § 10(b) claim "is simply a variant of proximate cause," and "the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). "Loss causation thus focuses on whether a loss can be attributed to the very facts about which the defendant lied." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021) (quoting *Mineworkers' Pension Scheme v. First Solar, Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (per curiam) (citation omitted)) (internal marks omitted). The Court finds that the FAC properly pleads loss causation. Plaintiff has alleged that the Prescience Report resulted in a significant drop in Enphase's stock price. FAC ¶ 271 ("On [publication of the Prescience Report], Enphase common stock plummeted from a June 16, 2020 closing price of $52.76 per share to close at $39.04 on June 17, 2020, a one day drop of $13.72 per share or approximately 26%."). While Defendants insist that short reports categorically cannot constitute corrective disclosures, Mot. at 19-20, that is not the law. Courts have certainly rejected pleadings in which short seller reports served as the corrective disclosures—but in those cases, the reports in question were anonymous and/or the information in the reports was entirely public. *See,*

*e.g.*, *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1203 (9th Cir. 2020) (blog post "was written by an anonymous short-seller with no expertise beyond that of a typical market participant who based the article solely on information found in public sources."); *Miller v. PCM, Inc.*, No. LACV 17-3364-VAP (KSx), 2018 WL 5099722, at *11 (C.D. Cal. Jan. 3, 2018) (blog post was "anonymous" and "was derived entirely from information that was publicly available"); *In re Intrexon Corp. Sec. Litig.*, No. 16-CV-02398-RS, 2017 WL 732952, at *7 (N.D. Cal. Feb. 24, 2017) (no loss causation where a short seller report "clearly attributes its findings to public filings, websites and other publicly available documents"); *Bonanno v. Cellular Biomedicine Grp., Inc.*, No. 15-CV-01795-WHO, 2016 WL 2937483, at *5 (N.D. Cal. May 20, 2016) (blog post was "anonymous" and all the information was already public); *In re Herbalife, Ltd. Sec. Litig.*, No. CV 14-2850, 2015 WL 1245191, at *5 (C.D. Cal. Mar. 16, 2015) ("The mere repackaging of already-public information by an analyst or short-seller is simply insufficient to constitute a corrective disclosure."). Those circumstances are clearly not applicable here.

Although unconvinced by Defendants' loss causation contentions, the Court will nonetheless grant Defendants' motion. The FAC fails to plead a material misrepresentation or omission. Plaintiff claims that Enphase's financial statements, as well as accompanying certifications by Enphase executives, were false or misleading due to (1) deferred revenue accounting, (2) tariffs on solar products manufactured in China, (3) a supposed related party transaction, (4) a shrinking market share, and (5) "fabricated" safe harbor revenues. FAC ¶¶ 164-219. The misrepresentations Plaintiff alleges are far from trivial; indeed, Plaintiff suggests that, in FY2019, Enphase's revenue was artificially inflated by a whopping 47.7%. *Id.* ¶ 20; *see also id.* ¶ 137.

The flimsy factual allegations in the FAC fail to shoulder the heavy weight of Plaintiff's theory. The FAC is entirely predicated on the Prescience Report's insistence that Enphase's financial reporting does not add up. But the fact that Plaintiff (and Prescience Point Capital Management) cannot reconcile the financials reported by Enphase to their interpretation of the solar

7

market, without more, does not plausibly allege a misstatement. *See Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 171 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) ("The fact that Lead Plaintiff cannot tick and tie the loss and loss adjustment expense reported in AmTrust's consolidated financial statement to the losses its individual subsidiaries reported to insurance regulators, without more, does not plausibly allege a misstatement."). Indeed, Plaintiff does not point to any restatement of Enphase's accounting, much less any missed earnings revealing the impact of alleged accounting fraud. *See In re Redback Networks, Inc. Sec. Litig.*, 2007 WL 963958, at *5 (N.D. Cal. Mar. 30, 2007) ("Plaintiffs have not cited, and the Court has not discovered, any cases holding that the accurate reporting of revenues can constitute the basis of a securities fraud claim. In all of the cases in which the reporting of revenues gave rise to a viable § 10(b) claim, there was either a restatement of revenues or the court determined that fraudulent revenue recognition had been pled."). In light of the severity of the revenue inflation alleged, the Court finds it wildly implausible that neither such event would have occurred in the aftermath of the publication of the Prescience Report. At bottom, the allegations—derived directly from a report from a short seller—do little more than cherry pick financial data and present such data in a manner favorable to Plaintiff's theory. *See* 15 U.S.C. § 78u–4(b)(1); *see, e.g.*, FAC ¶¶ 102-104. The PSLRA demands more.

The FAC also fails to point to any accounting standard that Enphase misapplied. The FAC alleges that Enphase adopted the ASC 606 accounting standard on January 1, 2018. FAC ¶¶ 132-134. What it fails to do, however, is allege *how* Enphase ran afoul of this standard. Instead, the FAC conclusory alleges that "[a]fter adopting ASC 606, Enphase began deferring both portions of Envoy revenue," *id.* ¶ 134, without pleading facts that set out the why this deference was improper under GAAP. While there can be no dispute that "premature revenue recognition is a GAAP violation," Opp. at 7, this principle does not obviate Plaintiff from pleading facts supporting the existence of a violation. Indeed, it is well-settled that GAAP provisions are subject to interpretation and "tolerate

8

a range of 'reasonable' treatments, leaving the choice among alternatives to management." *Thor Power Tool Co. v. C.I.R.,* 439 U.S. 522, 544 (1979). Even at the pleading stage, the Ninth Circuit has held that plaintiffs must set forth facts explaining why the allegedly fraudulent accounting decision "is not merely the difference between two permissible judgments," because flexible accounting concepts "do not always (or perhaps ever) yield a single correct figure." *In re GlenFed, Inc. Sec. Litig*., 42 F.3d 1541, 1549 (9th Cir.1994) (en banc); *see also In re Rackable Sys., Inc. Sec. Litig*., 2010 WL 3447857, at *7 (N.D. Cal. Aug. 27, 2010) (rejecting securities fraud claim where the plaintiff had "not alleged with particularity any facts to refute [the company's] explanations" for its accounting decisions). Plaintiff fails to plead any facts illustrating that Enphase exercised its judgment in a way that violated GAAP. *See* Opp. at 8-9 (focusing on market share statistics as opposed to Enphase's accounting practices). And, contrary to Plaintiff's suggestion, it is not the Defendants' job to "offer [an] alternate explanation for how [Enphase's reported revenue] could be possible" in light of the vague allegations in the FAC. *Id*. at 9. It is Plaintiff who shoulders the heavy burden of pleading facts to support the notion that the way Enphase deferred its revenue violated GAAP. *See Metzler*, 540 F.3d at 1061 ("By requiring specificity, § 78u–4(b)(1) prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." (emphasis in original)). The remaining grounds supporting Plaintiff's allegation of falsity similarly lack the PSLRA's requisite particularly.

This finding is dispositive to the Court's holding. Nonetheless, to aid in Plaintiff's amendment process, the Court further determines that the FAC further fails to plead scienter. Plaintiff must plead facts that give rise to a "strong inference" of scienter. *Metzler*, 540 F.3d at 1061. The facts alleged "must not only be particular, but also must 'strongly imply [the defendant's] *contemporaneous* knowledge that the statement was false when made.'" *In re Infonet Servs. Corp. Sec. Litig*., 310 F. Supp. 2d 1080, 1102 (C.D. Cal. 2003) (quoting *In re Read–Rite*, 335 F.3d 843,

847 (9th Cir.2003)) (alterations in original). Here, Plaintiff's scienter allegations rest on four grounds: (1) the "enormity of Enphase's GAAP violations," (2) "unusual" insider stock sales, (3) statements by former employees directly implicating the Defendants, and (4) numerous other red flags. Opp. at 16-22. Ground one fails for the reasons discussed above, namely Plaintiff's failure to plead specific facts about why Enphase's financial reporting was false or misleading. And ground four lacks the kind of particularized facts that normally buttress scienter allegations. *See* Reply at 12-13.

Grounds two and three fare no better. While Plaintiff claims that "[s]tatements by Enphase's former employees contribute to the inference that Defendants were knowingly involved in fraud," these statements fall far short of the pleading standard. All of the statements Plaintiff relies on the establish scienter are derived from anonymous former employees. But the FAC does not supply particularized allegations establishing the employees' reliability and personal knowledge. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) ("[T]he confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge." (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015-1016 (9th Cir. 2005)). Nor does it provide any corroboration of the anonymous employee allegations. *Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916, at *14 (S.D.N.Y. Sept. 10, 2012) ("Here, to the degree that the analysts' reports constitute or contain anonymous sources, they are also described with adequate particularity, and their statements are corroborated by other facts."). Nor is this Court fully satisfied that Plaintiff and his counsel have independently investigated all of the Prescience Report's allegations. *Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 804 (S.D.N.Y. 2020) ("'Allowing counsel to rely on confidential witness statements recounted' in a separate document whose authors had 'significant motive and opportunity . . . to misuse or mischaracterize confidential witness statements . . . would provide the Court little assurance that the factual contentions have any evidentiary support.'" (quoting *In re Lehman Bros. Sec. & Erisa Litig.*,

No. 09 MD 2017 LAK, 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013)) (alterations in original)); *see also* Fed. R. Civ. P. 11 (by presenting a pleading to the court, counsel certifies that to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: ... the factual contentions have evidentiary support.").

As for Plaintiff's reliance on insider stock sales, FAC ¶¶ 222-232, Defendants correctly highlight that seven of the eight identified insiders are not named in this action, and such sales are irrelevant to scienter. Mot. at 18; *Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at *14 (N.D. Cal. June 8, 2011) ("Sales by insiders not named as defendants, however, are irrelevant to the determination of the named defendant's scienter."); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F.Supp.2d 1059, 1081 n. 22 (N.D. Cal. 2001) ("[T]he Court finds no reason to consider the [non-defendants'] sales in determining the scienter of the named defendants."). That leaves only the stock sales by Defendant Branderiz to consider. *See* FAC ¶ 225 ("SEC filings confirm that Branderiz sold 100,249 shares on June 3, 2020, for a total of $5.4 million, just two weeks before Prescience Point's report came out."). This allegation fails to contribute to a finding of scienter as the FAC does not allege facts that explain why this sale was unusual or suspicious. *See In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir. 1999), *as amended* (Aug. 4, 1999), *superseded by statute on other grounds as recognized in In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017). This threadbare allegation fails to surmount even the most basic pleading requirement as there are no corresponding allegations about the proportion of shares Branderiz sold during the class period or about his past trading patterns. *See Metzler*, 540 F.3d at 1067 ("Three factors are relevant to [whether insider trading allegations constitute circumstantial evidence of scienter]: (1) the amount and percentage of the shares sold; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's trading history." (citation omitted)); *see, e.g., City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, No. 18-CV-04844-BLF, 2021 WL 1091891, at *27 (N.D. Cal. Mar. 22, 2021) (stock sales did not establish scienter where "[t]he SAC . . . fail[ed] to

allege what proportion of shares [defendant] sold during the Class Period"). Further, it is simply implausible that Branderiz had advance warning of the Prescience Report, which allegedly prompted his stock sell off.

### B. Claim 2: Section 20(a)

Section 20(a) of the Exchange Act extends liability for § 10(b) violations to those who are "controlling persons" of the alleged violations. *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1572 (9th Cir. 1990). To prevail on his claim for violations of § 20(a), Plaintiff must first allege a violation of § 10(b) or Rule 10b-5. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1033 n.15 (9th Cir. 2002). He has failed to do so here. Accordingly, the Court GRANTS the motion to dismiss the § 20(a) against Defendants Kothandaraman and Branderiz. Mot. at 21.

### V. ORDER

The Court GRANTS Defendants' Motion to Dismiss WITH LEAVE TO AMEND. Plaintiff SHALL file an amended complaint, if he is able to rectify the defects discussed above, no later than sixty days from the date of this Order. No parties or claims may be added without leave of Court.

**IT IS SO ORDERED.**

Dated: August 17, 2021

_____
BETH LABSON FREEMAN
United States District Judge